**Hearing Date & Time: June 26, 2012 at 11:00 a.m. (ET)**
**Objection Deadline: June 19, 2012 at 4:00 p.m. (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                    :   Chapter 11
                                          :
ARCAPITA BANK B.S.C.(c) et al.,           :   Case No. 12-11076
                                          :
                                          :   (Jointly Administered)
                          Debtors.        :
------------------------------------------------------------x

**APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**FOR AN INTERIM ORDER UNDER 11 U.S.C. §§ 328(a) AND 1103, FED. R.**
**BANKR. P. 2014 AND 2016, AND S.D.N.Y. LBR 2014-1, AUTHORIZING**
**EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY CAPITAL, INC.**
**AS FINANCIAL ADVISOR AND INVESTMENT BANKER**
**NUNC PRO TUNC TO APRIL 12, 2012**

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee"),

appointed in the above-captioned chapter 11 cases of Arcapita Bank B.S.C.(c) ("Arcapita

Bank"), and its affiliated debtors and debtors in possession (collectively, "Arcapita" or

the "Debtors") hereby applies (the "Application") for an interim order, under sections

328(a) and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as

amended, the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing

the employment and retention of Houlihan Lokey Capital, Inc. ("Houlihan") as its

financial advisor and investment banker, *nunc pro tunc* to April 12, 2012. The facts and

circumstances supporting this Application are set forth in the Declaration of David Hilty,

Managing Director of Houlihan, in support of this Application, which is attached hereto as <u>Exhibit A</u> (the "<u>Hilty Declaration</u>").

## **BACKGROUND**

1.      Commencing on March 19, 2012 (the "<u>Petition Date</u>") and continuing thereafter, the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On April 5, 2012, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") appointed the Committee (Docket No. 60) consisting of: (i) Euroville S.a.r.l.; (ii) National Bank of Bahrain BSC; (iii) Commerzbank AG; (iv) VR Global Partners, L.P.; (v) Barclays Bank PLC; (vi) Central Bank of Bahrain; and (vii) Arcsukuk (2011-1) Limited.

3.      No other official committees have been appointed or designated in these cases.

4.      On April 12, 2012, the Committee selected Houlihan to serve as financial advisors and investment bankers and FTI Consulting, Inc. ("FTI") to serve as financial advisors. It is currently contemplated that FTI will be principally responsible for providing to the Committee financial analyses of the Debtors' liquidity, cash activities, cash controls, intercompany activities, as well as tax-related advice, claims analysis and a review of potential avoidance actions.  Houlihan will be primarily responsible for

advising the Committee on the financial and strategic elements of the Debtors' assets and liabilities, proposed funding for or divestitures of investment positions, proposed business plan and alternatives, financing needs and alternatives, and potential plan of reorganization structures.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.  This matter constitutes a core proceeding as that term is defined in 28 U.S.C. § 157(b).  Venue of the Debtors' chapter 11 cases and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

### RELIEF REQUESTED

6.      By this Application, the Committee seeks authority to retain and employ Houlihan as its financial advisor and investment banker in these chapter 11 cases, *nunc pro tunc* to April 12, 2012 (the "Engagement Effective Date"), on an interim basis pursuant to the terms, and subject to the conditions, of the engagement letter between the Committee and Houlihan dated as of April 12, 2012 and attached hereto as Exhibit B (the "Engagement Letter"). Houlihan and the Committee remain in discussions regarding the amount and structure of the Deferred Fee to be paid to Houlihan upon the achievement of certain milestones. The Committee is seeking approval for Houlihan's Monthly Fee on an interim basis at this time, and under a separate motion will seek approval of Houlihan's Deferred Fee.

## APPLICABLE AUTHORITY

7.      Section 1103(a) of the Bankruptcy Code provides, in relevant part,

that the Committee, with the Court's approval, "may select and authorize the employment

by such committee of one or more attorneys, accountants, or other agents, to represent or

perform services for such committee."  11 U.S.C. § 1103(a).

8.      In addition, section 328(a) of the Bankruptcy Code provides, in

relevant part, that the Committee:

> may employ or authorize the employment of a professional person
> under section 327 or 1103 of this title, as the case may be, on any
> reasonable terms and conditions of employment, including on a
> retainer, on an hourly basis, on a fixed or percentage fee basis, or
> on a contingent fee basis.  Notwithstanding such terms and
> conditions, the court may allow compensation different from the
> compensation provided under such terms and conditions after the
> conclusion of such employment, if such terms and conditions
> prove to have been improvident in light of developments not
> capable of being anticipated at the time of the fixing of such terms
> and conditions.

11 U.S.C. § 328(a).

9.      Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of . . . professionals pursuant to . . .
> § 1103 . . . of the Code shall be made only on application of the trustee
> or committee.

Fed. R. Bankr. P. 2014.

10.      Local Bankruptcy Rule 2014-1 provides, in relevant part, as

follows:

> An application for the employment of a professional person
> pursuant to §§ 327 and 328 of the Bankruptcy Code shall state the
> specific facts showing the reasonableness of the terms and
> conditions of the employment, including the terms of any retainer,
> hourly fee or contingent fee arrangement.

S.D.N.Y. LBR 2014-1.

## HOULIHAN'S QUALIFICATIONS

11.      The Committee formally interviewed and reviewed qualification materials and fee proposals submitted by a number of candidates prior to selecting Houlihan as its financial advisor and investment banker.  Such selection was based on the Committee's determination that Houlihan is the best candidate for the financial advisory and investment banking services to be provided and that its proposed compensation structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of these chapter 11 cases and the proposals received from competing firms.

12.      The Committee has selected Houlihan to act as its financial advisor and investment banker in these cases based on Houlihan's extensive experience and expertise in corporate restructurings, its knowledge of private equity, the capital and real estate markets, valuation, corporate finance and merger and acquisition capabilities.

13.      Houlihan is a nationally recognized investment banking and financial advisory firm, with fourteen offices worldwide and more than 800 professionals.  Houlihan's Financial Restructuring Group, which has more than 160 professionals, is one of the leading advisors and investment bankers to unsecured and secured creditors, debtors, acquirers, and other parties-in-interest involved in financially troubled companies both in and outside of bankruptcy.  Houlihan has been, and is, involved in some of the largest restructuring cases in the United States, including representing official committees in Lehman Brothers Holdings Inc., Enron Corp., WorldCom, Inc., Delta Airlines, Inc., General Growth Properties, Capmark, and representing debtors in Mark IV Industries, Buffets Holdings, Inc., Bally Total Fitness

Holding Corp., XO Communications, Inc., Six Flags, Inc., Granite Broadcasting Corp.,

and MS Resorts.  Houlihan also advised the bondholders in the CIT Group, Inc. Chapter

11 as well as the second lien debt holder and plan sponsor in the Chapter 11 case of

General Maritime, Inc.

14.     The Committee believes that, because of Houlihan's experience

and expertise, its employment and retention is in the best interests of the Committee and

all of the Debtors' unsecured creditors.

## SCOPE OF SERVICES TO BE PROVIDED BY HOULIHAN

15.     It is expected that Houlihan will provide such advisory and

investment banking services to the Committee and its legal advisors as they deem

appropriate and feasible to advise the Committee in the course of these chapter 11 cases,

including, but not limited to, the following services:

A.     Analyzing business plans and forecasts of the Debtors;

B.     Evaluating the assets and liabilities of the Debtors;

C.     Assessing the financial issues and options concerning (i) the sale of
the Debtors, either in whole or in part, and (ii) the Debtors' chapter
11 plan(s) of reorganization or liquidation or any other chapter 11
plan(s);

D.     Analyzing and reviewing the financial and operating statements of
the Debtors;

E.     Providing such financial analyses as the Committee may require in
connection with the Cases;

F.     Assisting in the determination of an appropriate capital structure
for the Debtors;

G.     Assisting with a review of the Debtors' employee benefit
programs, including key employee retention, incentive, pension
and other post-retirement benefit plans;

H.      Analyzing strategic alternatives available to the Debtors;

I.      Evaluating the Debtors' debt capacity in light of its projected cash flows;

J.      Assisting in the review of claims and with the reconciliation, estimation, settlement, and litigation with respect thereto;

K.      Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any chapter 11 plan(s) or otherwise;

L.      Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

M.      Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

N.      Providing such other financial advisory and investment banking services as may be agreed upon by Houlihan and the Committee.


16.      The Committee is also seeking to retain and employ FTI as its financial advisor to specifically advise the Committee on the Debtors' liquidity, cash activities, cash controls, intercompany activities, as well as tax-related advice, claims analysis and a review of potential avoidance actions. Houlihan and FTI have coordinated (and will coordinate throughout these proceedings) the provision of their professional services for the Committee to avoid duplication of efforts, ensure efficiencies and leverage off of their respective organizations.  Houlihan and FTI have worked as co-advisors in other large, complex chapter 11 cases (*e.g.*, their recent engagements in the chapter 11 cases of Lehman Brothers Holdings Inc., General Growth Properties, and Smurfit Stone Container Corporation), and, as in those cases, Houlihan and FTI will ensure that best practices are included in the provision of professional services for the Committee.

## HOULIHAN'S ELIGIBILITY FOR EMPLOYMENT

17.      To the best of the Committee's knowledge, information, and belief, other than as set forth in the Hilty Declaration, Houlihan has not represented and has no relationship with: (i) the Debtors; (ii) their respective creditors or equity security holders; (iii) any other parties-in-interest in these cases; (iv) the respective attorneys and accountants of any of the foregoing; or (v) the U.S. Trustee or any other person employed in the Office of the U.S. Trustee.

18.      Houlihan will continue to represent certain clients in respect of transactions involving the Debtors or non-Debtor entities, or affiliated with the Debtors or other non-Debtor subsidiaries or affiliates, except where such action may be directly and materially adverse to Arcapita or the other non-Debtor subsidiaries or affiliates.  To the extent that the interests of the Committee and these clients in unrelated matters conflict in respect of Arcapita, the conflicts matter will be handled by FTI.

19.      Houlihan is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code.  The Hilty Declaration, executed on behalf of Houlihan in accordance with sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1, is filed contemporaneously herewith and incorporated herein by reference.  The Committee's knowledge, information, and belief regarding the matters set forth in this Application are based, and made in reliance, upon the Hilty Declaration.  The Committee believes that the employment of Houlihan will be in the best interests of the Committee, the Debtors and their estates and creditors.

## HOULIHAN'S COMPENSATION STRUCTURE

20.    Subject to the Court's approval, Houlihan will be entitled to be compensated in accordance with the following structure[1] for its services pursuant to, and as further explained by, the Engagement Letter:

- *__Monthly Fees__*:  Houlihan shall be paid in advance a nonrefundable monthly cash fee of $200,000 ("Monthly Fee"). The first payment shall be made upon the approval of this Application by the Bankruptcy Court and shall be in respect of the period as from the Effective Date through the month in which payment is made.  Thereafter, payment of the Monthly Fee shall be made on every monthly anniversary of the Effective Date during the term of this Agreement.  Each Monthly Fee shall be earned upon Houlihan's receipt thereof in consideration of Houlihan accepting this engagement and performing services as described herein. While the details remain under discussion among Houlihan and the Committee, it is currently contemplated that a portion of the Monthly Fees after some initial period will be credited against the Deferred Fee as defined below  (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Deferred Fee be reduced to below zero; and

- *__Deferred Fee__*:  In addition to the other fees provided for herein, the Debtors shall pay Houlihan a fee (the "Deferred Fee") to be paid in cash. Houlihan and the Committee remain in discussions regarding the amount and structure of the Deferred Fee. The Deferred Fee shall be earned and payable upon the confirmation of a Chapter 11 plan of reorganization or liquidation with respect to the Debtors, the terms of which are approved by the Committee (an "Approved Plan"), and shall be paid on the effective date of such Approved Plan.

---

[1] Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee) is liable for the fees, expenses or other amounts payable to Houlihan under the Engagement Letter. In the event of any discrepancy between this description and the Engagement Letter, the terms and conditions of the Engagement Letter should control.

21.     Subject to approval of this Court and the terms of the Engagement

Letter, the Debtors also shall reimburse Houlihan for all reasonable out-of-pocket

expenses, which are reasonably incurred in connection with the performance of its

services hereunder, including (i) the fees and expenses of Houlihan's legal counsel

incurred in connection with the negotiation and performance of the Engagement Letter

and the matters contemplated thereby, to the extent provided in the Retention Order, and

(ii) reasonable disbursements of Houlihan's travel expenses, duplicating charges,

computer charges, messenger services and long-distance telephone calls.

22.     The Committee also requests, and Houlihan has agreed, that in the

event Houlihan seeks reimbursement for attorneys' fees pursuant to the terms of the

Engagement Letter, the invoices and supporting time records from such attorneys shall be

included in Houlihan's own application and such invoices and time records shall be

subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses

and the approval of the Court under the standards of Bankruptcy Code sections 330 and

331.

23.     In addition to the foregoing, and as a material part of the

consideration for the agreement of Houlihan to furnish services to the Committee

pursuant to the terms of the Engagement Letter, Houlihan has requested that certain

indemnification provisions set forth in the Engagement Letter be approved.  The

Committee submits that the proposed indemnification provisions are standard in

Houlihan's industry and such provisions are fair and reasonable considering Houlihan's

qualifications and the expected scope of the services Houlihan will provide during this

engagement.

24.     The terms of the Engagement Letter were negotiated between the

Committee and Houlihan, and reflect the Committee's evaluation of the extensive work

that will be performed by Houlihan and its expertise.  The Committee acknowledges and

agrees that the Monthly Fees have been agreed upon by the parties (and that the Deferred

Fee will be agreed by the parties) in anticipation that a substantial commitment of

professional time and effort will be required of Houlihan and its professionals under the

Engagement Letter, and in light of the fact that such commitment may foreclose other

opportunities for Houlihan and its professionals and that the actual time and commitment

required of Houlihan and its professionals to perform the services hereunder may vary

substantially from week to week or month to month, creating "peak load" issues for the

firm.

25.     In light of the foregoing and given the numerous issues which

Houlihan may be required to address in the performance of its services hereunder,

Houlihan's commitment to the variable level of time and effort necessary to address all

such issues as they arise, and the market prices for Houlihan's services for engagements

of this nature and in an out-of-court context, the Committee acknowledges and agrees

that the Monthly Fees are fair and reasonable under the standards set forth in Bankruptcy

Code section 328(a).

### WAIVER OF REQUIREMENTS REGARDING TIME DETAIL

26.     Customarily, investment bankers such as Houlihan do not charge

for their services on an hourly basis.  Instead, their fees consist of monthly "flat" fees and

deferred compensation contingent upon the occurrence of specified events such as the

confirmation of a chapter 11 plan.  As is the case with other investment bankers,

Houlihan does not customarily maintain time records like those maintained by attorneys'

and other professionals compensated on an hourly basis.  Moreover, the Committee has also been advised that requiring Houlihan create the time entries for its restructuring personnel and require its non-restructuring personnel to record their time as prescribed by the Bankruptcy Rules, Local Rules and U.S. Trustee Fee Guidelines would be, in each case, unduly burdensome and time consuming.  Accordingly, the Committee requests that Houlihan be excused from the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-1 and the U.S. Trustee Fee Guidelines or otherwise conform to a schedule of hourly rates for its professionals.

27.     Notwithstanding the foregoing, Houlihan will nonetheless maintain records (in summary format) of its services rendered for the Committee by financial restructuring professional personnel employed by Houlihan, including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and will present such records to the Court. In addition, Houlihan will provide a list of names of professional employees not in the financial restructuring group who provide services through the course of the engagement. Houlihan has requested that, to the extent the U.S. Trustee has any objection to the scope, completeness or adequacy of Houlihan's time records or summaries thereof, the U.S. Trustee notify Houlihan of such objection within 30 days of receipt thereof or be deemed to have waived any such objection.

## **RETENTION PURSUANT TO SECTION 328(a)**

28.     The Committee is seeking to retain Houlihan under section 328(a) of the Bankruptcy Code.  As noted above, section 328(a) provides, in relevant part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any

reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C.§ 328(a). Section 328(a) permits the retention and compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions, including alternative fee structures to the customary hourly rate. Accordingly, the compensation structure outlined in the Engagement Letter is similar to arrangements routinely approved by courts in this district under section 328(a). The Committee further believes that because Houlihan will be retained under section 328(a), the firm's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" under applicable law.

29.    Notwithstanding the foregoing, the U.S. Trustee shall retain the right to object to the compensation to be paid to Houlihan pursuant to the Engagement Letter based on the reasonableness standard provided for in Bankruptcy Code section 330; provided, that, with respect to the U.S. Trustee's retention of rights under section 330, it is understood and agreed that reasonableness for this purpose shall be evaluated by comparing the fees payable in these cases to fees paid to other investment banking firms offering comparable services in other chapter 11 cases and shall not be evaluated primarily on the basis of time committed or the length of these cases.

30.    Except as otherwise provided herein, Houlihan intends to apply to the Court for interim and final payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules, the U.S. Trustee Fee Guidelines, and pursuant to any additional

procedures that may be or have already been established by the Court in these cases.

## **NOTICE**

31.     No trustee or examiner has been appointed in these chapter 11

cases.  The Committee has served notice of this Motion on: (i) the Office of the U.S.

Trustee (Attn: Tracy H. Davis); (ii) Counsel for the Debtors, Gibson, Dunn & Crutcher

LLP (Attn: Michael A. Rosenthal, Janet M. Weiss, and Matthew K. Kelsey); and (iii)

parties entitled to receive notice in these chapter 11 cases pursuant to the Bankruptcy

Code, Bankruptcy Rule 2002, and the Final Order Pursuant To Section 105(a) Of The

Bankruptcy Code And Bankruptcy Rules 1015(a) And 9007 To Implement Certain

Notice And Case Management Procedures. The Committee submits that no other or

further notice need be provided.

## **NO PRIOR REQUEST**

32.     No previous application for the relief requested herein has been

made to this or any other court.


[*remainder of page intentionally left blank*]

**WHEREFORE**, the Committee respectfully requests the Court to enter an

interim order, substantially in the form attached hereto as <u>Exhibit C</u>, (i) authorizing the

Committee to retain and employ Houlihan *nunc pro tunc* to April 12, 2012, as its

financial advisor and investment banker pursuant to sections 328(a) and 1103 of the

Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1 and

(ii) granting the Committee such other relief as is appropriate.

DATED:  New York, New York
         June 12, 2012

                  **THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ARCAPITA BANK B.S.C.(c)., <u>ET</u> <u>AL</u>.**

                  By:  Barclays Bank PLC, solely in its
                         capacity as Chair of the Committee and not in its
                         individual capacity

                         By: <u>/s/ Mark Glogoff</u>           
                         Name:  Mark Glogoff
                         Title:  Head of Credit Restructuring Advisory Group

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                              :

*In re*                             :     Chapter 11
                              :

ARCAPITA BANK B.S.C.(c) et al.,     :     Case No. 12-11076
                              :

               Debtors.     :     Jointly Administered
                              :
------------------------------------------------------------------- X

**DECLARATION OF DAVID HILTY IN SUPPORT OF THE APPLICATION FOR AN INTERIM ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ARCAPITA BANK B.S.C.(c).
<u>NUNC PRO TUNC TO APRIL 12, 2012</u>**

        I, David Hilty, hereby declare as follows:

        1.       I am a Managing Director of Houlihan Lokey Capital, Inc. ("<u>Houlihan</u>").  I am duly authorized to make this Declaration on behalf of Houlihan and submit this Declaration in support of the application of the above-captioned Official Committee of Unsecured Creditors of Arcapita Bank B.S.C.(c) ("Committee") in this Chapter 11 case for authorization of the employment and retention of Houlihan as financial advisor and investment banker to the Committee at the expense of the Debtor's estate. This Declaration is also submitted as the statement required pursuant to §§ 328(a), 329 and 504 of Title 11, United States Code (11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")).

        2.       Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.  To the extent that any information disclosed herein requires subsequent amendment or modification upon Houlihan's

completion of further analysis or as additional creditor information becomes available to it, one or more supplemental declarations will be submitted to the court reflecting the same.

3.      I believe that Houlihan and the professionals it employs are uniquely qualified to advise the Committee in the matters for which Houlihan is proposed to be employed.

4.      Established in 1970, Houlihan is an international investment banking/financial advisory firm with fourteen offices worldwide and more than 800 professionals.  Houlihan has one of the largest worldwide financial restructuring practices of any investment bank. Houlihan's Financial Restructuring Group, which has more than 160 professionals, is one of the leading advisors and investment bankers to unsecured and secured creditors, debtors, acquirers, and other parties-in-interest involved in financially troubled companies both in and outside of bankruptcy.

5.      Houlihan's name, address, telephone and facsimile numbers are:

> Houlihan Lokey Capital, Inc.
> 245 Park Avenue – 20th Floor
> New York, NY 10167
> Telephone: (212) 497-4100
> Facsimile: (212) 687-0529

6.      Houlihan has agreed to provide investment banking and financial advisory services to the Committee in the above-captioned chapter 11 cases pursuant to the terms and conditions of the Engagement Letter (attached as Exhibit C to the Application), including the indemnification provisions set forth therein. Houlihan and the Committee remain in discussions regarding the amount and structure of the Deferred Fee to be paid to Houlihan upon the achievement of certain milestones. The Committee is seeking approval for Houlihan's Monthly Fee on an interim basis at this time, and under a separate motion will seek approval of Houlihan's Deferred Fee.

7.      In connection with its proposed retention by the Committee in these cases, Houlihan has researched client databases maintained with respect to Houlihan, to determine whether it has any relationships with the entities (individually, an "Interested Party" and collectively, the "Interested Parties") that were identified to Houlihan by the Debtors, and which are listed on Schedule 1.  Such entities include, among others:

a)  the Debtors and non-Debtor affiliates;

b)  additional affiliates and investments of the Debtors (redacted), the list of which was compiled based on publicly available information and information provided to the Committee by the Debtors;

c)  Committee members and their professionals;

d)  the Debtors' prepetition and postpetition secured bank lenders, advisors and counsel;

e)  the holders of more than 5% of the Debtors' equity securities;

f)  current directors and officers, board members of the Debtors and individuals who have served as officers or directors of the Debtors in the past two years;

g)  the Debtors' proposed professionals and ordinary course professionals;

h)  the Debtors' fifty largest unsecured creditors on a consolidated basis as of the Petition Date, as identified in their chapter 11 petitions;

i)  the Debtors' landlords, utility providers, insurers, insurance brokers and bank accounts;

j)  the Debtors' fifty largest vendors;

k)  parties relating to signification litigation with the Debtors;

l)  parties to executory contracts with the Debtors; and

m) other potentially material parties in interest, as identified on the list provided by the Debtors or appearing in these Cases on the Petition Date or shortly thereafter;

8.      The attached <u>Schedule 2</u> details the relationship check performed by Houlihan, and identifies any relationships discovered through such investigation that members of Houlihan have with any Interested Parties in these chapter 11 cases.

9.      By way of further disclosure:

(a)      From time to time, Houlihan's Financial Restructuring Group, which is providing the services in this case, has provided services, and likely will continue to provide services to certain attorneys, other professionals, creditors (including lenders) and/or security holders of the Debtors and various other parties, some of whom may be providing services to, or may be adverse to, or may be otherwise connected to, the Debtors in each case in matters unrelated to these chapter 11 cases.

(b)      In addition to its Financial Restructuring Group, Houlihan provides services to a wide range of institutions and individuals and may in the past have had, and may currently or in the future have, financial advisory or other investment banking relationships with parties that may have interests with respect to the Debtors.  In the ordinary course of business, investment funds affiliated with Houlihan and certain of Houlihan's employees, as well as investment funds in which such employees may have financial interests, but over whose investment decisions such employees have no input or control, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtors or other parties that may have an interest in these chapter 11 cases or have other relationships with the Debtors. With respect to any such securities, financial instruments and/or investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion.  Moreover, the Houlihan employees who are working on these chapter 11 cases are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

(c)      Houlihan's Hedge Fund and Derivatives Valuation Services Group provides valuation opinions on the securities and derivative holdings of various business development companies, private equity firms and hedge funds, which may include debt securities of the Debtors.  This work is unrelated to the financial advisory services that Houlihan intends to provide in these chapter 11 cases.  Moreover, Houlihan, through the establishment of an "Information Wall," has separated its employees in the Hedge Fund and Derivatives Valuation

4

Services Group from the rest of the employees of Houlihan.  This "Information Wall" includes physical and technological barriers, compliance mechanisms and policies and procedures designed to prevent confidential, non-public information and work product from being shared improperly.

(d)    Houlihan personnel may have business associations with certain creditors of the Debtors or counsel or other professionals involved in these chapter 11 cases on matters unrelated to these chapter 11 cases.  In addition, in the ordinary course of its business, Houlihan may engage counsel or other professionals in unrelated matters who now represent, or in the future may represent, creditors or other interested parties in these chapter 11 cases.

10.    Except as may be otherwise set forth herein, to the best of my knowledge, Houlihan, its principals and professionals (i) do not have any relevant connections with the Debtors or their affiliates except for this engagement, its creditors, or any other party in interest, (ii) are "disinterested persons" under section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and (iii) do not hold or represent any interest adverse to the Debtors' estates.

11.    To the best of my knowledge, information and belief, neither the undersigned nor the Houlihan professionals expected to assist the Committee in this case are connected to any United States Bankruptcy Judges for the Southern District of New York or the United States Trustee for Region 2 (or its key staff members).

12.    The Debtors have numerous creditors and relationships with various individuals and entities that may be parties in interest in the case.  Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict, including the efforts outlined above, Houlihan is unable to state with certainty whether one of its clients or an affiliated entity holds a claim or otherwise is a party in interest in these chapter 11 cases.  If Houlihan discovers any information that is contrary to or pertinent to the statements made herein, Houlihan will disclose such information to the Court.

13.     Houlihan does not advise, has not advised, and will not advise any entity, other than the Committee, in matters related to these chapter 11 cases.

14.     To the extent Houlihan discovers any facts bearing on the matters described herein during the period of Houlihan's retention, Houlihan undertakes to amend and supplement the information contained in this Affidavit to disclose such facts.

15.     As set forth more fully in the Engagement Letter, and subject in its entirety to the terms set forth in the Engagement Letter, Houlihan will be compensated for the Restructuring Services, subject to Court approval, in the following manner (the "Fee Structure"):

a)  **Monthly Fees:**  Houlihan shall be paid in advance a nonrefundable monthly cash fee of $200,000 ("Monthly Fee"). The first payment shall be made upon the approval of this Application by the Bankruptcy Court and shall be in respect of the period as from the Effective Date through the month in which payment is made.  Thereafter, payment of the Monthly Fee shall be made on every monthly anniversary of the Effective Date during the term of this Agreement.  Each Monthly Fee shall be earned upon Houlihan's receipt thereof in consideration of Houlihan accepting this engagement and performing services as described herein. While the details remain under discussion among Houlihan and the Committee, it is currently contemplated that a portion of the Monthly Fees after some initial period will be credited against the Deferred Fee as defined below  (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Deferred Fee be reduced to below zero; and

b)  **Deferred Fee:**  In addition to the other fees provided for herein, the Debtors shall pay Houlihan a fee (the "Deferred Fee") to be paid in cash. Houlihan and the Committee remain in discussions regarding the amount and structure of the Deferred Fee. The Deferred Fee shall be earned and payable upon the confirmation of a Chapter 11 plan of reorganization or liquidation with respect to the Debtors, the terms of which are approved by the Committee (an "Approved Plan"), and shall be paid on the effective date of such Approved Plan.

16.      Subject to approval of this Court and the terms of the Engagement Letter, the

Debtors also shall reimburse Houlihan for all reasonable out-of-pocket expenses, which are

reasonably incurred in connection with the performance of its services hereunder, including (i)

the fees and expenses of Houlihan's legal counsel incurred in connection with the negotiation

and performance of the Engagement Letter and the matters contemplated thereby, to the extent

provided in the Retention Order, and (ii) reasonable disbursements of Houlihan's travel

expenses, duplicating charges, computer charges, messenger services and long-distance

telephone calls.

17.      The Fee Structure is consistent with Houlihan's typical fees for work of this

nature.  The Fee Structure is set at a level designed to compensate Houlihan fairly for the work

of its professionals and assistants, and to cover fixed and routine overhead expenses.  It is

Houlihan's policy to charge its clients for all disbursements and expenses incurred in the

rendition of services.

18.      The Fee Structure is comparable to those generally charged by financial advisory

and investment banking firms of similar stature to Houlihan and for comparable engagements,

both in and out of court, and reflect a balance between a fixed monthly fee and a contingency

amount which are tied to the consummation and closing of the transactions contemplated in the

Engagement Letter.

19.      Among the terms and conditions in the Engagement Letter is an indemnity for the

benefit of Houlihan and certain other Indemnified Persons (the "Indemnity Provision").  The

Indemnity Provision is a reasonable term and condition of the Houlihan engagement.  Financial

advisors rely heavily on information provided by debtors in making contacts with potential

lenders, investors, buyers or other parties to potential transactions.  It is customary, for this

7

reason, that financial advisors receive indemnification from the entities for whom they work. The Engagement Letter includes the Indemnity Provision, which is customary in scope. The Engagement Letter makes clear that no indemnification is available for losses that are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted primarily from an Indemnified Person's own bad faith, gross negligence or willful misconduct.

20.     Unlike the market for other professionals that a debtor may retain, indemnification is a standard term of the market for investment bankers and financial advisors. In fact, the Indemnity Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Houlihan and for comparable engagements, both in and out of court.

21.     The proposed retention is reasonable and based on the customary compensation charged by Houlihan and comparably skilled practitioners in matters outside and other than chapter 11 cases, as well as cases under chapter 11, similar retention terms have been approved and implemented in this and other jurisdictions. Indeed, the entire engagement as set forth in the Engagement Letter is common within the industry and reflects what is considered to be "market" both in and out of chapter 11 proceedings, in each case, in light of Houlihan's experience in restructurings and the scope of work to be performed pursuant to its retention. Houlihan and the Committee remain in discussions regarding the amount and structure of the Deferred Fee to be paid to Houlihan upon the achievement of certain milestones. The Committee is seeking approval for Houlihan's Monthly Fee on an interim basis at this time, and under a separate motion will seek approval of Houlihan's Deferred Fee.

22.     The terms of the Engagement Letter were negotiated between the Committee and Houlihan, and reflect the Committee's evaluation of the extensive work that will be

performed by Houlihan and its expertise.  The Committee acknowledges and agrees that the Monthly Fees have been agreed upon by the parties (and that the Deferred Fee will be agreed by the parties) in anticipation that a substantial commitment of professional time and effort will be required of Houlihan and its professionals under the Engagement Letter, and in light of the fact that such commitment may foreclose other opportunities for Houlihan and its professionals and that the actual time and commitment required of Houlihan and its professionals to perform the services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

23.     In light of the foregoing and given the numerous issues which Houlihan may be required to address in the performance of its services hereunder, Houlihan's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan's services for engagements of this nature and in an out-of-court context, the Committee acknowledges and agrees that the Monthly Fees are fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).  Other than as set forth above and in the Engagement Letter, no other arrangement is proposed between the Committee and Houlihan for compensation to be paid in this case.

24.     There is no agreement or understanding between Houlihan and any other entity, other than employees of Houlihan, for the sharing of compensation received or to be received for the performance of services rendered in connection with the Engagement Letter.

25.     The foregoing constitutes the statement of Houlihan pursuant to sections 327 and 504 of the Bankruptcy Code, and Bankruptcy Rule 2014.

26.	Pursuant to 28 U.S.C. §1746, I declare that the foregoing is true and correct to the best of my knowledge.  Executed this 12 day of June, 2012 in New York.

/s/ David Hilty
Name:  David Hilty
Title:	Managing Director

## Schedule 46
### Conflict Parties Searched

| Company:[1] | Company:[1] | Company:[1] |
|---|---|---|
| 2Connect | Boubyan Bank K.S.C. | Honeywell |
| 2Connect WLL | Brown Rudnick LLP | HSH Nordbank AG, Luxembourg Branch |
| ADP Total Source | BT Holdings Limited | Illinoise Department of Revenue |
| Advent Resource Consultancy PTE Ltd | BT WCF Limited | India Growth Holdings Limited |
| AEI II Cayman Holdings Limited | Cajun Holdings Limited | ING Bank N.V. |
| AEI II Holdings Limited | Castello Holdings Limited | Innovations Holdings Limited |
| AEID II Holdings Limited | Castello WCF Limited | Insulation Holdings Limited |
| AHQ Cayman Holdings Limited | CDL Properties Ltd. | Isle Holdings II Limited |
| AIA Limited | CEE Residential I Holdings Limited | Isoftechnology WCF Limited |
| AIDT India Holdings Limited | CEIP Holdings Limited | ISP International Limited |
| AIFL Investment Holdings Limited | CEIP WCF Limited | Jasmine Quadrilateral Investment Corp. |
| Al-Gosaibi Travel Agency | Central Bank of Bahrain | JEDI Limited |
| Allen Gledhill LLP | Chicago Condominium Holdings Limited | JJ Holdings Limited KEDI Limited |
| Al-Moayyed Computers | Chicago Condominium WCF Limited | JP Morgan Chase, New York |
| Alvarez & Marsal | CIMB Bank Berhad | Kasowitz, Benson, Torres & Friedman LLP |
| Alvarez & Marsal North America, LLC | Cleary Gottlieb Steen & Hamilton LLP | Kaye Scholer LLP |
| American Express | Clifford Chance LLP | Keypoint Consulting |
| AMPD (DE) Limited Partnership | CMS Cameron McKenna LLP | King & Spalding |
| Andrews Kurth LLP | Commerce - MGI (Malaysia) Ltd. | Kirkland & Ellis |
| AquaInvest Holdings Limited | Commerce MGI SDN. BHD | Kirkland & Ellis International LLP |
| Arab Banking Corporation | Commerzbank AG | KMS Team New York Inc. |
| ARC (Cayman) Real Estate Fund Holdings Limited | Complete Corporate Services PTE Ltd. | Korn / Ferry International |
| ARC Management Limited | Compufin Limited | KPMG LLP |
| Arcapita (Europe) Limited | Condo Conversion WCF Limited | Kuwait Finance House KSC |
| Arcapita (HK) Limited | CrediMax | La Mesa Holdings Limited Locker Room Holdings II Ltd. |
| Arcapita (Singapore) Limited | Credit Suisse, London | Linklaters LLP |
| Arcapita (US) Limited | DAH Holdings Limited | Locker Room Holdings Limited |
| Arcapita Bank B.S.C. | Dawnay, Day & Co. Limited | Loghomes Holdings Limited |
| Arcapita Fund Administration Services Limited | DBS Bank Ltd | Loghomes II WCF Limited |
| Arcapita GCC Real Estate Management I Limited | Deacons | LogHomes WCF Limited |
| Arcapita Hong Kong Limited | Dechert LLP | Logistics Holdings Limited |
| Arcapita Inc. | Deutsche Bank Luxembourg S.A. | Logistics WCF Limited |
| Arcapita Industrial Management I Limited | Devonshire Limited | Longwood Holdings Limited |
| Arcapita Industrial Management II Limited | District Cooling Capital Limited | Lusail Heights Holdings Limited |
| Arcapita Industrial Management Sarl | District Cooling Holdings Limited | MAF Dalkia Bahrain |
| Arcapita Investment Funding Limited | Doha Bank | Majestic Global Investments Limited |
| Arcapita Investment Holdings Limited | Dr. HJ Mohd. Amin Liew Bin Abdullah | Malayan Banking Berhad, London Branch |
| Arcapita Investment Management Limited | Dr. Khalid Boodai | Maples & Calder |
| Arcapita Limited (UK) | Drillbit Holdings Limited | Marsh |
| Arcapita LT Holdings Limited | Drillbit WCF II Limited | Marsh Ltd. |
| Arcapita Pte. Limited (Singapore) | Drillbit WCF Limited | Mashreqbank psc |
| Arcapita Structured Finance Limited | Earth Holdings Limited | Mayer Brown LLP |
| Arcapita Ventures I Holdings Limited | Earth WCF Limited | MC Limited |
| Arcapita Ventures I WCF Limited | EastNets | MEDI Limited |
| ArcIndustrial European Development Holdings Limited | ElectricInvest Holdings Limited | Medifax Holdings Limited |
| ArcResidential Japan Holdings Limited | ElectricInvest WCF II Limited | Menatelecom |
| ArcResidential Japan WCF Limited | ElectricInvest WCF Limited | Microsoft Bahrain |
| Arcsukuk (2011-1) Limited | Ernst & Young | Midtown Acquisitions LP |
| Ard Limited | Eternal Holdings Limited | Ministry of Electricity |
| ASM Formule 3 / Art Grand Prix | European Islamic Investment Bank Plc | Moore Stephens LLP |
| Aspen Valley Ranch Holdings Limited | Euroville S.àr.1 | Morgan, Lewis & Bockius LLP |
| Aspen Valley Ranch WCF Limited | Falcon Gas | Mourant Ozannes |
| Avionics Holdings Limited | Farid Hassani | Mr. Aamer Abduljalil Al-Fahim |
| Avionics WCF Limited | FEDI Limited | Mr. Abdulaziz Hamad Aljomaih |
| Bahrain Bay Development B.S.C.(c) | FlowInvest WCF Limited | Mr. Abdulla Abdullatif Al-Fozan |
| Bahrain Bay Utilities Company BSC | Fortis Bank NA/NV | Mr. Abdulrahman Abdulaziz Al-Muhanna |
| Bahrain Islamic Bank | Fountains | Mr. Atif Ahmed Abdulmalik |
| Bahrain Telecom. Company | Fountains WCF Limited | Mr. Ghazi Fahad Alnafisi |
| Bandtree SDN BHD | French Kitchen Holdings Limited | Mr. Ibrahim Yusuf Al-Ghanim |
| Bank of America N.A. | FTI Consulting Inc. | Mr. Junaidi Masri |
| Bank of Bahrain & Kuwait | Fuad Al Ghanim & Sons General Trading and Contracting | Mr. Khalifa Mohammed Al-Kindi |
| Bank of New York Mellon | G.P. Zachariades Overseas Ltd. | MS Surgery Holdings Limited |
| Bank of Taiwan, Singapore Branch | Gas Holdings Limited | Nass Contracting Co. W.L.L / Murray & Ro |
| Barclays Bank PLC | Gas WCF Limited | National Bank of Bahrain BSC |
| BAWAG P.S.K. Osterreichische Postsparkasse | Gibson, Dunn & Crutcher LLP | Natixis |
| BAWAG P.S.K. Aktiengesellschaft | Goldman Sachs Lending Partners | Navigant Consulting Inc |
| BBK B.S.C. | GP Zachariades Overseas Ltd. | NavIndia Holding Company Limited |
| Bert Funding Company Limited | H.E. Sheikh Jassim Bin Hamad Bin Jassim Bin Jabr | NavIndia Holdings Limited |
| Blacktop Holdings Limited | Hajah Harini Binti Haji Abdulla | Noon Investment Company (storage) |
| Bospower Holdings Limited | Hatim S. Zu'Bi & Partners | Oliver Wyman Limited |
| Bospower WCF II Limited | Haya Rashed Al Khalifa Law Firm | Oman Industrial Holdings Limited |
| BosPower WCF Limited | HEDI Investments Limited | Oman Logistics Fund Holdings Limited |

## Schedule 46
## Conflict Parties Searched

| Company:[1] | Company:[1] | Company:[1] |
|---|---|---|
| Orlando Residential Holdings Limited | Reed Smith LLP | Storapod WCF Limited |
| OSP Holdings Limited | Riffa Holdings Limited | Tabung Amanah Pekerja |
| OSP WCF Limited | Riffa Views B.S.C. | Tadhamon Capital B.S.C. |
| Outlet Center Holdings Limited | Riffa WCF Limited | Takaful International Co. |
| Outlet Center WCF Limited | Ritzy Property Holdings Limited | TechInvest Holdings Limited |
| Overseas Fund Co. S.P.C. | Riyad Bank | TechInvest WCF Limited |
| Paget Brown & Co | Riyadh House Est | Tender Loving Care Holdings Limited |
| Palatine Holdings Limited | Rothschild Inc. | The Arab Investment Company S.A.A. |
| Path Solutions K.S.C.C | Royal Bank of Scotland N.V. | The Blackstone Group International Limit |
| Perbadanan Tabung Amanah Islam Brunei | Saudi Industrial Capital I Limited | The Garden City Group, Inc. |
| Perennial | Saudi Industrial Holdings Limited | The Governor and Company of the Bank of Ireland |
| Perennial Holdings II Limited | Schirrmeister, Diaz-Arrastia, Brem LLP | The Royal Bank of Scotland plc |
| Perennial Holdings III Limited | Sheikh Khalid Bin Thani Bin Abdullah Al-Thani | Thornbeam Limited |
| Perennial Holdings IV Limited | Sheikh Mohammed Abdulaziz Aljomaih | Tide Natural Gas Storage I, LP |
| Perennial Holdings Limited | Shutdown Maintenance Service | Tide Natural Gas Storage II, LP |
| Peter Paul Pardi | Sidley Austin LLP | Treasurer, State of Maine |
| PointPark Properties EOOD | Sima Samiealhak Q Malak | Trowers & Hamlins LLP |
| Pointpark Properties France SAS | Singapore Industrial Holdings Limited | US Senior Living WCF Limited |
| Pointpark Properties GmbH | Singapore Industrial II Holdings Limited | VGC WCF Limited |
| PointPark Properties Pte. Limited | Singapore Industrial II WCF Limited | Victory Heights Lifestyle Holdings Limited |
| Pointpark Properties S.p.z.o.o. | Singapore Industrial WCF Limited | Victory Heights WCF Limited |
| Pointpark Properties S.r.o. | Siteco | VR Global Partners, L.P. |
| Pointpark Properties SK S.r.o. | Small Smiles Holdings Limited | Walter Knoll AG & Co. KG |
| PointPark Properties W.L.L. | Social Insurance Organization (GOSI) | WaterWarf Holdings II Limited |
| PointPark Properties, S.L. | Solidarity General | WaterWarf Holdings Limited |
| Poland Residential Holdings Limited | Sonar Holdings Limited | Waverly Holdings Limited |
| Pond Bay Holdings Limited | Sonar Security | WestLB AG |
| Premium Coffee Holdings Limited | Sortalogic Holdings Limited | Wind Power Holdings Limited |
| Prevention Software | St. Christophers School | WindTurbine Holdings Limited |
| Pricewaterhouse Coopers LLP | Standard Bank plc | WindTurbine WCF Limited |
| Profine | Standard Bank PLN | Xerox |
| PVC Holdings Limited | Standard Bank SGD | YAK Holdings Limited |
| PVC WCF Limited | Standard Chartered Bank | Yayasan Sultan Haji Hassanal Bolkiah |
| PWC Hong Kong | StockMore Holdings Limited | Yousef A Alammar |
| PWC Singapore | StoraFront Holdings Limited | Zain Bahrain B.S.C.(c) |
| Quick Zebra Services | Storapod Holdings Limited | Zolfo Cooper LLP |
| RailInvest Holdings Limited | Storapod WCF II Limited | Zutecgulf W.L.L., Bahrain |
| Rapids Limited | | |

Note:
(1) Names of investments made by Arcapita have been redacted for the public filing of this application. The Committee is filing simultaneously herewith a motion pursuant to section 107 of the Bankruptcy Code seeking authority to file such information under seal. An unredacted version has been provided to the U.S. trustee.

## Parties in Interest to Whom Houlihan Has Provided Services

| Client:[1] | Job Code: | Start: | End: |
|---|---|---|---|
| Natixis North America Inc. | FAS - FA - Portfolio-Valuation | 12/23/2011 | Ongoing |
| [Redacted] | FAS - FA - Portfolio-Valuation | 12/19/2011 | Ongoing |
| Morgan, Lewis & Bockius, LLP | FRG - Creditor Advisors | 12/13/2011 | 1/31/2012 |
| [Redacted] | FAS - FA - Portfolio-Valuation | 11/30/2011 | Ongoing |
| [Redacted] | FAS - FA - Portfolio-Valuation | 6/22/2011 | 12/19/2011 |
| Mayer Brown LLP | FAS - Lit - Exp Wit-Litigation | 6/3/2011 | Ongoing |
| Mayer Brown LLP | FAS - Lit - Exp Wit-Pre-Complnt | 5/31/2011 | Ongoing |
| Mayer Brown LLP | FAS - Lit - Exp Wit-Litigation | 5/25/2011 | 11/28/2011 |
| [Redacted] | FAS - Purchase Price Allocation | 5/20/2011 | 9/7/2011 |
| The Royal Bank of Scotland (RBS) | FRG - Debtor Advisors | 3/18/2011 | 4/20/2011 |
| Gibson, Dunn & Crutcher, LLP | FAS - FMV Non-Transaction Based Opinion | 3/14/2011 | 10/24/2011 |
| Dechert LLP | FAS - Lit - Exp Wit-Arbitration | 2/1/2011 | 2/24/2012 |
| Zolfo Cooper | FAS - FA - Portfolio-Valuation | 12/14/2010 | 7/11/2011 |
| Sidley Austin LLF | FAS - Lit - Exp Wit-Bankruptcy | 10/29/2010 | Ongoing |
| Kirkland & Ellis, LLF | FAS - Solvency | 10/20/2010 | 2/15/2011 |
| [Redacted] | FRG - Creditor Advisors | 9/16/2010 | 8/2/2011 |
| JPMorgan Chase & Co. | CF - Exclusive Sale | 8/10/2010 | 11/12/2010 |
| [Redacted] | CF - General Financial Advisory | 6/7/2010 | 9/15/2010 |
| JPMorgan Chase & Co. | FRG - Creditor Advisors | 3/26/2010 | 6/30/2010 |
| [Redacted] | FAS - FA - Portfolio-Valuation | 3/15/2010 | 9/28/2011 |
| Bank of America N.A. | FAS - Lit - Exp Wit-Arbitration | 3/11/2010 | Ongoing |
| JPMorgan Chase & Co. | CF - Exclusive Sale | 11/19/2009 | 6/1/2010 |
| Gibson, Dunn & Crutcher, LLP | FAS - Lit - Exp Wit-Litigation | 11/10/2009 | 2/24/2010 |
| JPMorgan Chase & Co. | CF - Exclusive Sale | 2/26/2009 | 2/26/2010 |
| [Redacted] | FAS - TFR - FV Opinion | 1/28/2009 | 7/29/2009 |
| Sidley Austin LLF | FRG - Creditor Advisors | 12/5/2008 | 1/31/2010 |
| King & Spalding, LLF | FRG - Creditor Advisors | 11/17/2008 | 7/31/2009 |
| Andrews Kurth LLP | FAS - FMV Non-Transaction Based Opinion | 10/14/2008 | 1/22/2009 |
| [Redacted] | FRG - DM&A Sellside | 9/7/2008 | 10/17/2008 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 8/21/2008 | 3/25/2009 |
| [Redacted] | FAS - FA - Portfolio-Valuation | 7/21/2008 | 4/12/2010 |
| Gibson, Dunn & Crutcher, LLP | FAS - InSource | 7/3/2008 | 5/8/2009 |
| [Redacted] | FAS - Solvency | 6/20/2008 | 8/15/2009 |
| The Bank Of New York Mellon Corporation | FRG - Creditor Advisors | 6/8/2008 | 8/31/2009 |
| [Redacted] | FAS - Purchase Price Allocation | 4/3/2008 | 8/18/2008 |
| [Redacted] | FAS - FA - Portfolio-Valuation | 3/5/2008 | 7/29/2008 |
| [Redacted] | FAS - Purchase Price Allocation | 2/15/2008 | 11/3/2008 |
| The Bank Of New York Mellon Corporation | FRG - Debtor Advisors | 9/19/2007 | 9/30/2008 |
| Gibson, Dunn & Crutcher, LLP | FAS - Fairness | 6/21/2007 | 10/12/2007 |
| JPMorgan Chase & Co. | CF - Exclusive Sale | 5/21/2007 | 8/8/2007 |
| Cleary, Gottlieb, Steen & Hamilton | FAS - Consulting | 12/22/2006 | 11/25/2009 |
| Sidley Austin LLF | FAS - FMV Non-Transaction Based Opinion | 12/13/2006 | 4/23/2007 |
| [Redacted] | FAS - FA - Portfolio-Valuation | 10/2/2006 | 6/20/2011 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 9/14/2006 | 12/27/2006 |
| Deutsche Bank Luxembourg S. A. | FRG - Creditor Advisors | 9/8/2006 | 6/1/2007 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 8/17/2006 | 11/21/2006 |
| The Blackstone Group International Limited | FAS - FMV Transaction Based Opinion | 7/11/2006 | 11/10/2006 |
| [Redacted] | FAS - Purchase Price Allocation | 4/13/2006 | 2/27/2007 |
| Gibson, Dunn & Crutcher, LLP | FAS - Fairness | 2/23/2006 | 10/22/2007 |
| [Redacted] | FAS - Purchase Price Allocation | 2/6/2006 | 7/27/2006 |
| Bank of America, N.A. | FAS - Collateral Valuation | 1/9/2006 | 3/3/2006 |
| [Redacted] | FAS - Purchase Price Allocation | 12/21/2005 | 7/5/2006 |
| Morgan, Lewis & Bockius, LLP | FAS - Tax | 11/3/2005 | 3/18/2008 |
| Bank of America, N.A. | FAS - ESOP Update | 10/26/2005 | 4/24/2006 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 9/28/2005 | 1/17/2007 |
| Bank of America, N.A. | FAS - ESOP Fairness | 9/9/2005 | 1/20/2006 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 8/25/2005 | 2/6/2007 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 8/25/2005 | 8/21/2006 |
| Morgan, Lewis & Bockius, LLP | FAS - Litigation | 7/26/2005 | 5/23/2006 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 7/11/2005 | 12/5/2006 |
| Bank of America, N.A. | FAS - ESOP Update | 7/5/2005 | 9/12/2005 |
| [Redacted] | FAS - Purchase Price Allocation | 6/27/2005 | 9/12/2005 |
| [Redacted] | FAS - TFR - FV Opinion | 6/17/2005 | 8/19/2005 |
| Arcapita Inc. | FAS - Purchase Price Allocation | 5/20/2005 | 9/14/2005 |
| Bank of America, N.A. | FAS - ESOP Update | 2/28/2005 | 6/28/2005 |
| Arcapita Inc. | FAS - Purchase Price Allocation | 1/20/2005 | 7/25/2005 |
| Arcapita Inc. | FAS - Purchase Price Allocation | 1/20/2005 | 7/25/2005 |
| Mayer Brown LLP | FAS - TFR - FV Opinion | 1/18/2005 | 4/28/2005 |
| [Redacted] | FAS - Stock, Option Valuation | 1/10/2005 | 6/22/2005 |
| [Redacted] | FAS - Tax | 12/8/2004 | 4/7/2005 |
| [Redacted] | FAS - Solvency | 11/29/2004 | 3/18/2005 |
| [Redacted] | FAS - Solvency | 9/21/2004 | 12/31/2004 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 9/14/2004 | 5/26/2005 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 6/28/2004 | 3/28/2005 |
| Arcapita Inc. | FAS - Purchase Price Allocation | 6/4/2004 | 8/1/2005 |
| Arcapita Inc. | FAS - Purchase Price Allocation | 6/4/2004 | 8/1/2005 |
| The Royal Bank of Scotland (RBS) | FAS - FMV Non-Transaction Based Opinion | 5/10/2004 | 7/28/2004 |
| The Royal Bank of Scotland (RBS) | FAS - Tax | 3/8/2004 | 4/21/2004 |
| The Royal Bank of Scotland (RBS) | FAS - FMV Non-Transaction Based Opinion | 3/1/2004 | 11/18/2005 |
| Bank of America, N.A. | FAS - ESOP Update | 2/26/2004 | 7/30/2004 |
| Bank of America, N.A. | FAS - ESOP Update | 12/24/2003 | 3/30/2004 |
| Arcapita Inc. | FAS - Purchase Price Allocation | 8/27/2003 | 4/1/2004 |
| Andrews Kurth LLP | FAS - Estate & Gift Tax | 7/31/2003 | 6/2/2004 |
| Gibson, Dunn & Crutcher, LLP | FAS - Estate & Gift Tax | 7/3/2003 | 1/6/2004 |
| PricewaterhouseCoopers, LLP | FAS - Estate & Gift Tax | 5/12/2003 | 3/4/2004 |
| Bank of America, N.A. | FAS - ESOP Update | 3/31/2003 | 5/12/2003 |
| King & Spalding, LLF | FAS - Solvency | 3/11/2003 | 5/16/2003 |
| Xerox Corporation | FAS - FMV Transaction Based Opinion | 2/5/2003 | 4/29/2003 |
| Gibson, Dunn & Crutcher, LLP | FAS - FMV Transaction Based Opinion | 1/16/2003 | 5/19/2003 |
| Bank of America, N.A. | FAS - FMV Non-Transaction Based Opinion | 1/14/2003 | 3/26/2003 |
| Gibson, Dunn & Crutcher, LLP | FAS - Litigation | 12/6/2002 | 5/19/2003 |
| Mayer Brown LLP | FAS - Tax | 9/26/2002 | 11/21/2002 |

## Schedule 26
## Parties in Interest to Whom Houlihan Has Provided Services

| Client:[1] | Job Code: | Start: | End: |
|---|---|---|---|
| Gibson, Dunn & Crutcher, LLP | FAS - Litigation | 8/1/2002 | 5/19/2003 |
| Bank of America, N.A. | FAS - Consulting | 6/24/2002 | 10/21/2002 |
| Sidley Austin LLF | FAS - Litigation | 4/26/2002 | 10/21/2002 |
| King & Spalding, LLF | FAS - FMV Transaction Based Opinion | 4/4/2002 | 4/8/2002 |
| [Redacted] | FAS - Litigation | 3/28/2002 | 7/26/2002 |
| Gibson, Dunn & Crutcher, LLP | FAS - Litigation | 3/18/2002 | 5/19/2003 |
| Bank of America, N.A. | FAS - ESOP Update | 3/6/2002 | 6/25/2002 |
| Bank of America, N.A. | FAS - FMV Non-Transaction Based Opinion | 3/5/2002 | 6/25/2002 |
| Bank of America, N.A. | FAS - FMV Non-Transaction Based Opinion | 3/5/2002 | 6/25/2002 |
| Bank of America, N.A. | FAS - FMV Non-Transaction Based Opinion | 3/5/2002 | 6/25/2002 |
| Bank of America, N.A. | FAS - FMV Non-Transaction Based Opinion | 3/5/2002 | 6/25/2002 |
| Bank of America, N.A. | FRG - Creditor Advisors | 3/1/2002 | 3/13/2002 |
| Gibson, Dunn & Crutcher, LLP | FAS - Litigation | 3/1/2002 | 9/27/2002 |
| Kaye Scholer, LLP | FAS - FMV Transaction Based Opinion | 3/1/2002 | 6/25/2002 |
| King & Spalding, LLF | FAS - Litigation | 3/1/2002 | 6/4/2002 |
| Mayer Brown LLP | FAS - Fairness | 3/1/2002 | 3/27/2002 |
| Morgan, Lewis & Bockius, LLP | FAS - Litigation | 3/1/2002 | 11/18/2004 |
| Bank of America, N.A. | FAS - FMV Non-Transaction Based Opinion | 2/25/2002 | 3/6/2002 |
| Sidley Austin LLF | FAS - Tax | 3/31/2001 | 7/31/2001 |
| KPMG, LLP | FAS - Purchase Price Allocation | 8/11/2000 | 11/30/2000 |
| Standard Chartered Bank | CF - General Financial Advisory | 5/23/2000 | 6/25/2002 |
| KPMG, LLP | FAS - FMV Non-Transaction Based Opinion | 4/26/2000 | 6/12/2002 |
| Bank of America, N.A. | FAS - ESOP Fairness | 4/12/2000 | 6/30/2000 |
| Mayer Brown LLP | FAS - Estate & Gift Tax | 3/1/2000 | 5/10/2002 |
| Gibson, Dunn & Crutcher, LLP | CF - General Financial Advisory | 12/20/1999 | 12/31/1999 |
| Sidley Austin LLF | FRG - Debtor Advisors | 11/18/1999 | 4/29/2002 |
| Korn Ferry International | CF - Buyer Representation | 7/31/1999 | 11/30/1999 |
| [Redacted] | FAS - Consulting | 3/31/1999 | 7/31/1999 |
| Korn Ferry International | FAS - FMV Non-Transaction Based Opinion | 12/31/1998 | 1/31/1999 |
| [Redacted] | FAS - Consulting | 10/31/1998 | 2/28/1999 |
| Sidley Austin LLF | FAS - FMV Non-Transaction Based Opinion | 10/31/1998 | 4/30/2000 |
| Korn Ferry International | FAS - FMV Non-Transaction Based Opinion | 7/31/1998 | 9/30/1998 |
| [Redacted] | CF - Exclusive Sale | 1/31/1998 | 1/31/2000 |
| Kirkland & Ellis | FAS - Consulting | 8/31/1995 | 12/31/1997 |
| Korn Ferry International | FAS - Consulting | 11/30/1994 | 5/31/1995 |
| King & Spalding, LLF | FAS - Consulting | 5/31/1994 | 9/30/1994 |
| Korn Ferry International | FAS - Fairness | 12/31/1993 | 12/31/1993 |
| Gibson, Dunn & Crutcher, LLP | FAS - Litigation | 9/30/1993 | 11/30/1993 |
| Korn Ferry International | FAS - Consulting | 10/31/1992 | 12/31/1992 |
| Gibson, Dunn & Crutcher, LLP | FAS - Litigation | 5/31/1992 | 8/31/1992 |
| Korn Ferry International | FAS - Fairness | 9/30/1991 | 10/31/1991 |

Note:
(1) Names of investments made by Arcapita have been redacted for the public filing of this application. The Committee is filing simultaneously herewith a motion pursuant to section 107 of the Bankruptcy Code seeking authority to file such information under seal. An unredacted version has been provided to the U.S. trustee.

## Schedule 4

### Parties Related to Arcapita to Whom Houlihan Has Provided Services

| Client:[1] | Job Code: | Start: | End: | Description:[1] |
|---|---|---|---|---|
| [Redacted] | FAS - Purchase Price Allocation | 5/20/2011 | 9/7/2011 | Performed valuation of tangible and intangible assets for financial reporting purposes for Arcapita's acquisition of [redacted] in April 2011 |
| [Redacted] | FRG - Creditor Advisors | 3/26/2010 | 6/30/2010 | Retained by Mezzanine holders to negotiate an out-of-court restructuring that included increased interest rate and a warrant package |
| [Redacted] | FAS - TFR - FV Opinion | 1/28/2009 | 7/29/2009 | Retained to value [redacted] interests in 7 different healthcare facilities for financial reporting purposes |
| [Redacted] | FAS - Purchase Price Allocation | 2/15/2008 | 11/3/2008 | Provided fair value analysis of identifiable intangible assets received in Arcapita's acquisition of [redacted] for financial reporting purposes |
| [Redacted] | FAS - Purchase Price Allocation | 4/13/2006 | 2/27/2007 | Provided fair value analysis of identifiable intangible assets received in Arcapita's acquisition of [redacted] for financial reporting purposes |
| [Redacted] | FAS - Purchase Price Allocation | 2/6/2006 | 7/27/2006 | Valued the identifiable intangible assets during the [redacted] transaction for financial reporting purposes |
| [Redacted] | FAS - Purchase Price Allocation | 12/21/2005 | 7/5/2006 | Valued warrants issues to the lender during the [redacted] transaction for financial reporting purposes |
| [Redacted] | FAS - Purchase Price Allocation | 6/27/2005 | 9/12/2005 | Provided fixed asset valuation for financial reporting purposes |
| [Redacted] | FAS - TFR - FV Opinion | 6/17/2005 | 8/19/2005 | Valued non-marketable minority interest share |
| Arcapita Inc. | FAS - Purchase Price Allocation | 5/20/2005 | 9/14/2005 | Analyzed the fair value of identifiable intangible and tangible assets for financial reporting purposes |
| Arcapita Inc. | FAS - Purchase Price Allocation | 1/20/2005 | 7/25/2005 | Analyzed fair value of identifiable intangible assets of [redacted] for financial reporting purposes |
| [Redacted] | FAS - Stock, Option Valuation | 1/10/2005 | 6/22/2005 | Analyzed and provided opinion of value for financial reporting purposes |
| [Redacted] | FAS - Tax | 12/8/2004 | 4/7/2005 | Desktop appraisal of the machinery and equipment of [redacted] in connection with [redacted] acquisition of [redacted] |
| [Redacted] | FAS - Solvency | 9/21/2004 | 12/31/2004 | Provided solvency opinion for going-private transaction as well as valued intangible assets for financial reporting purposes |
| Arcapita Inc. | FAS - Purchase Price Allocation | 6/4/2004 | 8/1/2005 | Provided fair value analysis of identifiable intangible and tangible assets received in Arcapita's acquisition of [redacted] for financial reporting purposes |
| Arcapita Inc. | FAS - Purchase Price Allocation | 8/27/2003 | 4/1/2004 | Analyzed fair value of identifiable intangible and tangible assets of portfolio company for financial reporting purposes |
| [Redacted] | FAS - Consulting | 3/31/1999 | 7/31/1999 | Description not available. |
| [Redacted] | FAS - Consulting | 10/31/1998 | 2/28/1999 | Description not available. |

*Note:*
*(1) Names of investments made by Arcapita have been redacted for the public filing of this application. The Committee is filing simultaneously herewith a motion pursuant to section 107 of the Bankruptcy Code seeking authority to file such information under seal. An unredacted version has been provided to the U.S. trustee.*

**EXHIBIT B**

*Personal and Confidential*

As of April 12, 2012

The Official Committee (the "Committee") of Unsecured Creditors of **Arcapita Bank B.S.C.(c),**
and its affiliated debtors and debtors-in-possession (the "Debtors") in care of the Chair of the Committee

Barclays Bank PLC
200 Park Avenue
New York, New York, 10066
Attn: Marc Glogoff, Head of Credit Restructuring Advisory Group

Dear Ladies and Gentlemen:

This letter agreement (this "Agreement") confirms the terms under which the Committee has engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), to provide financial advisory and investment banking services to the Committee in connection with the Debtors' Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

1.  **Services**.  Pursuant to its engagement by the Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by the Committee:

    a)    Analyzing business plans and forecasts of the Debtors;

    b)    Evaluating the assets and liabilities of the Debtors;

    c)    Assessing the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' chapter 11 plan(s) of reorganization or liquidation or any other chapter 11 plan(s);

    d)    Analyzing and reviewing the financial and operating statements of the Debtors;

    e)    Providing such financial analyses as the Committee may require in connection with the Cases;

    f)    Assisting in the determination of an appropriate capital structure for the Debtors;

    g)    Assisting with a review of the Debtors' employee benefit programs, including key employee retention, incentive, pension and other post-retirement benefit plans;

    h)    Analyzing strategic alternatives available to the Debtors;

    i)    Evaluating the Debtors' debt capacity in light of its projected cash flows;

Marc Glogoff
Chair of The Official Committee of Unsecured
Creditors of Arcapita Bank B.S.C.(c)
Page 2

  j)  Assisting in the review of claims and with the reconciliation, estimation, settlement, and litigation with respect thereto;

  k)  Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any chapter 11 plan(s) or otherwise;

  l)  Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

  m)  Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

  n)  Providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Committee.

2.  **Committee Engagement**. Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder. Houlihan Lokey is providing its services as the financial advisor to the Committee, and is not providing any services on behalf of the individual members of the Committee. To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, Houlihan Lokey and the Committee, with the advice of Committee Counsel, shall in good faith work to mutually resolve such issue. At the direction of Committee Counsel, certain communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtors and, accordingly, will be subject to the attorney-client privilege and work-product doctrine.

3.  **Fees and Expenses.** In consideration of Houlihan Lokey's acceptance of this engagement, the Debtors shall pay the following:

  (i) *Monthly Fees*: Houlihan Lokey shall be paid in advance a nonrefundable monthly cash fee of $200,000 ("Monthly Fee"). The first payment shall be made upon the approval of this Agreement by the Bankruptcy Court and shall be in respect of the period as from the Effective Date through the month in which payment is made. Thereafter, payment of the Monthly Fee shall be made on every monthly anniversary of the Effective Date during the term of this Agreement. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein.

  (ii) *Deferred Fee*: In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey a fee (the "Deferred Fee") to be paid in cash. Houlihan Lokey and the Committee remain in discussions regarding the amount and structure of the Deferred Fee. The Deferred Fee shall be earned and payable upon the confirmation of a Chapter 11 plan of reorganization or liquidation with respect to the Debtors, the terms of which are approved by the Committee (an "Approved Plan"), and shall be paid on the effective date of such Approved Plan.

4.  **Term and Termination.** In the event that (a) the Committee's application for employment of Houlihan Lokey under Sections 328(a) and 1103 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") is not granted by the Bankruptcy Court or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Houlihan Lokey in its sole

Marc Glogoff
Chair of The Official Committee of Unsecured
Creditors of Arcapita Bank B.S.C.(c)
Page 3

discretion, this Agreement shall terminate immediately.  Otherwise, this Agreement may be terminated at any time by either Houlihan Lokey or the Committee upon thirty days prior written notice to the other party.  The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3 and (ii) Houlihan Lokey's right to receive, and the Debtors' obligation to pay, any and all fees, expenses and other amounts due hereunder, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Debtors of the Deferred Fee described in this Agreement so long as the conditions set forth in Section 3(ii) hereunder causing such Deferred Fee to be due and payable are satisfied during the term of this Agreement or within 18 months after the date of expiration or termination of this Agreement.

5.    **Reasonableness of Fees.**  The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for Houlihan Lokey.  Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for Houlihan Lokey.  Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Debtors and the Committee.

6.    **Expenses.**  In addition to all of the other fees and expenses described in this Agreement, the Debtors shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder.  Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors on a periodic basis, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Debtors for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of this Agreement and the matters contemplated hereby, (ii) Houlihan Lokey's employment as a professional person in the Cases and (iii) the payment of all fees and expenses due to Houlihan Lokey hereunder, including, without limitation, in connection with fee disputes and objections to Houlihan Lokey's fees by any party in the Cases.

7.    **Invoicing and Payment.**  All amounts payable to Houlihan Lokey shall, unless otherwise expressly permitted herein, be made in lawful money of the United States, and shall be made in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Debtors shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes").  All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

Marc Glogoff
Chair of The Official Committee of Unsecured
Creditors of Arcapita Bank B.S.C.(c)
Page 4

8.      **Information.**  The Committee shall use all reasonable efforts to cause the Debtors (i) to provide Houlihan Lokey with access to management and other representatives of the Debtors and other participants in a transaction, as reasonably requested by Houlihan Lokey and (ii) to furnish all data, material and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Debtors that Houlihan Lokey reasonably requests in connection with the services to be performed for the Committee hereunder.  Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Debtors or the Committee or otherwise reviewed by, or discussed with, Houlihan Lokey. The Committee understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein.  The Committee acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Debtors or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters.  The Committee acknowledges that Houlihan Lokey's ability to render the services hereunder will depend upon the extent of cooperation that it receives from the Company and the Company's advisors. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Committee in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or entity or used for any other purpose.  Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey.

9.      **Limitations on Services as Advisor.**  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing, by Houlihan Lokey and the Committee. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Committee, and that Houlihan Lokey is not acting as an agent or fiduciary of the Committee or any other person or entity in connection with this engagement, and the Committee agrees that it shall not make, and hereby waives, any claim based on an assertion of such an agency or fiduciary relationship. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Committee's or the Debtors' decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any transaction(s).

10.     **Bankruptcy Court Approval.**  The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Sections 328(a) and 1103 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and Houlihan Lokey's employment hereunder shall not be subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Committee, that the value to the Committee of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Deferred Fee is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.  The Committee shall use its best efforts to cause Houlihan Lokey's employment application to be considered on the most expedited basis.  The employment

Marc Glogoff
Chair of The Official Committee of Unsecured
Creditors of Arcapita Bank B.S.C.(c)
Page 5

application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of their filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. If the order authorizing the employment of Houlihan Lokey is obtained, the Debtors shall pay all fees and expenses due pursuant to this Agreement, as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

11.    **Credit**. Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Debtors' logo or other identifying marks) describing its services in connection with this engagement.

12.    **Choice of Law; Jury Trial Waiver; Jurisdiction. THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF HOULIHAN LOKEY AND THE COMMITTEE IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN THE BANKRUPTCY COURT.**

13.    **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services to the Committee under this Agreement, the Debtors shall (i) indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, Houlihan Lokey's engagement under this Agreement, any transaction or any actions taken or omitted to be taken by an Indemnified Party, the Committee, any member of the Committee or the Debtors in connection with this Agreement and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action), arising out of or relating to the formulation of any plan of reorganization for the Debtors, this Agreement, or such engagement, transaction or actions. However, the Debtors shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party.

Marc Glogoff
Chair of The Official Committee of Unsecured
Creditors of Arcapita Bank B.S.C.(c)
Page 6

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Debtors shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with the services rendered by Houlihan Lokey.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and Debtors, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations.  Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Debtors pursuant to this Agreement.  Relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Debtors, and its security holders, creditors (including members of the Committee), and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement.  Neither the Committee nor the Debtors shall settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Committee, the Debtors or any person or entity asserting claims related to or arising out of this Agreement, Houlihan Lokey's engagement under this Agreement, any transaction, or any actions taken or omitted to be taken by an Indemnified Party, the Debtors or the Committee in connection with this Agreement, except for losses, claims, damages or liabilities incurred by the Committee and/or the Debtors which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party, and no Indemnified Party shall have any liability whatsoever to any other person or entity.  The indemnity, reimbursement, and other obligations and agreements of the Committee and the Debtors set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the Effective Date and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

14.   **Miscellaneous.**  This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed in the Cases.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the Committee, the Indemnified Parties and each of their respective successors, heirs and

Marc Glogoff
Chair of The Official Committee of Unsecured
Creditors of Arcapita Bank B.S.C.(c)
Page 7

assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by Houlihan Lokey and the Chair or other authorized representative of the Committee and approved by the Bankruptcy Court.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Debtors will provide Houlihan Lokey upon request certain identifying information necessary to verify the identity of the Debtors, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Company agrees that Houlihan Lokey may share information obtained from the Company and other parties hereunder with certain of its affiliates, and may perform the services contemplated hereby in conjunction with such affiliates.

The Committee has all requisite power and authority to enter into this Agreement and perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Committee and has been duly executed and delivered by the Committee and constitutes a legal, valid and binding agreement of the Committee, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Committee understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Committee confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

Marc Glogoff
Chair of The Official Committee of Unsecured
Creditors of Arcapita Bank B.S.C.(c)
Page 8


       All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

       Very truly yours,

       **HOULIHAN LOKEY CAPITAL, INC.**


       By: **/s/ David Hilty**
          **David Hilty**
          **Managing Director**


Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ARCAPITA BANK B.S.C.(c)**


By:  **Barclays Bank, Chair of the Committee**


By:    **/s/ Marc Glogoff**
      **Marc Glogoff**
      **Head of Credit Restructuring Advisory Group**

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                              :   Chapter 11
                                                    :
ARCAPITA BANK B.S.C.(c) et al.,                     :   Case No. 12-11076
                                                    :
                                                    :   (Jointly Administered)
                          Debtors.                  :
------------------------------------------------------------x

**INTERIM ORDER UNDER 11 U.S.C. §§ 328(a) AND 1103, FED. R. BANKR. P.
2014 AND 2016, AND S.D.N.Y. LBR 2014-1 AUTHORIZING EMPLOYMENT
AND RETENTION OF HOULIHAN LOKEY CAPITAL, INC., AS FINANCIAL
ADVISOR AND INVESTMENT BANKER TO OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF ARCAPITA BANK B.S.C.(c).
NUNC PRO TUNC TO APRIL 12, 2012**

Upon the application, dated June 12, 2012 (the "Application"), of the

Official Committee of Unsecured Creditors (the "Committee") appointed in the above-

captioned chapter 11 cases (the "Chapter 11 Cases") of Arcapita Bank B.S.C.(c)

("Arcapita Bank"), and its affiliated debtors and debtors in possession (collectively,

"Arcapita" or the "Debtors") for an interim order, pursuant to sections 328(a) and 1103 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and rule 2014-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "Local Rules"), authorizing the Committee to retain and

employ Houlihan Lokey Capital, Inc. ("Houlihan") as financial advisor and investment

banker for the Committee, *nunc pro tunc* to April 12, 2012, pursuant to the terms of the

engagement letter between the Committee and Houlihan, dated as of April 12, 2012 (the

"Engagement Letter"); and the Court having jurisdiction to consider the Application and

the relief requested therein pursuant to 28 U.S.C. § 1334 and the Standing Order of

Referral of Cases to Bankruptcy Judges of the United States District Court for the

Southern District of New York (Ward, Acting C.J.), dated July 10, 1984; and

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been

provided, and it appearing that no other or further notice need be provided; and the Court

having reviewed the Application and determined that the employment of Houlihan by the

Committee is necessary and in the best interest of the Debtors' estates, creditors, and

other parties in interest and that the terms of compensation being sought by the

Application as set forth in the Engagement Letter are reasonable; and the Court having

considered the Declaration of David Hilty, sworn to June 12, 2012 (the "Hilty

Declaration") filed in support of the Application; and the Court being satisfied based on

the representations in the Application and the Hilty Declaration that Houlihan does not

represent any other entity having an adverse interest in connection with the case; and the

Court having determined that the legal and factual bases set forth in the Application

establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court, and after due deliberation and sufficient cause appearing therefore, it is

hereby:

ORDERED that the Application is granted as provided herein on an

interim basis; and it is further

ORDERED that in accordance with sections 328(a) and 1103 of the

Bankruptcy Code, the Committee is authorized to employ and retain Houlihan *nunc pro*

*tunc* to April 12, 2012 as its financial advisor and investment banker in the above-captioned bankruptcy cases on the terms set forth in the Application, the Engagement Letter and the Hilty Declaration; and it is further

ORDERED that all compensation and reimbursement of expenses to be paid to Houlihan shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code, and none of the fees contemplated by the Engagement Letter shall constitute a "bonus" under applicable law; and it is further

ORDERED that, notwithstanding the preceding paragraph, the compensation to be paid to Houlihan shall be subject to prior approval of this Court pursuant to the standard of review described above, and the U.S. Trustee shall retain the right to object to the compensation payable pursuant to the Engagement Letter based on the reasonableness standard provided for in section 330 of the Bankruptcy Code; provided, it is understood and agreed that reasonableness for this purpose shall be evaluated by comparing the fees payable in these cases to fees paid to other investment banking firms offering comparable services in other chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of these cases; and it is further

ORDERED that in the event Houlihan seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Houlihan's own application and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses (the "U.S. Trustee Fee Guidelines") and

3

the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the

Bankruptcy Code; and it is further

ORDERED that in light of the services to be provided by Houlihan and

the compensation structure in the Engagement Letter, Houlihan and its professionals shall

be excused from the requirement to maintain or provide detailed time records in

accordance with Bankruptcy Rule 2016(a), Local Rule 2016-1 and the U.S. Trustee Fee

Guidelines or conform to a schedule of hourly rates for its professionals; provided,

however, that Houlihan shall nonetheless maintain records (in summary format) of its

services rendered for the Committee by financial restructuring professional personnel

employed by Houlihan, including reasonably detailed descriptions of those services, the

approximate time expended in providing those services and the individuals who provided

those services, and shall present such records to the Court, and will also provide a list of

names of professional employees not in the financial restructuring group who provide

services through the course of the engagement; and it is further

ORDERED that to the extent the U.S. Trustee has any objection to the

scope, completeness or adequacy of Houlihan's time records or summaries thereof, the

U.S. Trustee shall notify Houlihan of such objection within 30 days of receipt thereof or

be deemed to have waived any such objection; and it is further

ORDERED that all requests of Houlihan for payment of indemnity

pursuant to the Engagement Letter shall be made by application and shall be subject to

review by the Court to ensure that payment of such indemnity conforms to the terms of

the Engagement Letter and is reasonable based upon the circumstances of the litigation or

settlement in respect of which indemnity is sought; provided, however, that in no event

shall Houlihan be indemnified in the case of its own willful misconduct or gross

negligence; and it is further

        ORDERED that to the extent this Order is inconsistent with the

Engagement Letter or the Application, this Order shall govern; and it is further

        ORDERED that this Court shall retain jurisdiction with respect to all

matters arising or related to the implementation of this order; and it is further

Dated: New York, New York
        _____, 2012


_____
UNITED STATES BANKRUPTCY JUDGE