| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>In re:<br><br>ARCAPITA BANK B.S.C.(c), *et al.*,<br><br>                    Debtors.<br>------------------------------------------------------------x | NOT FOR PUBLICATION<br><br><br>Chapter 11<br><br>Case No. 12-11076 (SHL)<br><br>(Jointly Administered) |

## MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S :**

**LAW OFFICES OF TALLY M. WEINER, ESQ.**
*Counsel for Captain Hani Alsohaibi*
119 West 72nd Street, PMB 350
New York, New York 10023
By:    Tally M. Weiner, Esq.

**GIBSON, DUNN & CRUTCHER LLP**
*Counsel for the Debtors*
200 Park Avenue
New York, New York 10166-0193
By:    Michael A. Rosenthal, Esq.
       Craig H. Millet, Esq.
       Jeremy L. Graves, Esq.


**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the objection of the above-captioned Debtors to claim number 280 (the "Claim"), which was filed by Captain Hani Alsohaibi (the "Claimant") against Arcapita Bank B.S.C. ("Arcapita Bank"), one of the Debtors, in the amount of $1,039,032.33. Papers subsequently submitted by Claimant on this issue raise the amount of the Claim to "the aggregate amount of $1,527,139.35." (Response ¶ 1 [Docket No. 1417].)[1]

---

[1]     The Claimant makes no explanation as to why this amount differs from the amount listed on the face of the Claim. This discrepancy is not, however, material to resolution of the Debtors' objection to the Claim.

The Debtors object that the vast majority of the Claim is based on an equity investment in non-Debtor entities for which the Debtors have no liability.[2] The Debtors note that their books and records indicate that the Claimant has a balance of $148.91 in a bank account with Arcapita Bank, and the Debtors seek to reduce the Claim to this amount. The Claimant responded to the Debtors' objection and a hearing on the matter was held on August 27, 2013. At the hearing, counsel to both the Debtors and the Claimant decided to forego oral argument and rest on their papers. For the reasons set forth below, the Court grants the Debtors' objection to the Claim.

## DISCUSSION

Fed. R. Bankr. P. 3001(f) provides that "a proof of claim executed and filed in accordance with [the Bankruptcy Rules] constitutes *prima facie* evidence of the validity and amount of the claim." Thus, when a claim is properly filed, the objecting party bears the initial burden of persuasion, and must produce "evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (internal citations and quotations omitted). The burden then shifts to the claimant, who must "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Id.*

In this case, the Debtors have come forward with evidence establishing that, except for $148.91, the Claim is based on an equity investment in non-Debtor entities. More specifically, the Debtors' evidence establishes that the amounts requested by the Claimant are for equity investments in three non-Debtor entities: Cirrus Industries, Inc., Bahrain Bay Development B.S.C.(c) and Riffa Views B.S.C(c).

---

[2] The Court notes that the Debtors have objected to numerous other claims on the same basis. (*See, e.g., Debtors' Second Omnibus Objection to Claims* (the "Second Omnibus Objection") [Docket # 1050].)

2

In identifying and evaluating the evidence submitted by the Debtors, it is necessary to trace the history of the pleadings filed regarding the Claim.  The Debtors initially objected to the Claim in their Second Omnibus Objection [Docket # 1050].  The Debtors further addressed the Claim – along with several others – in the *Supplement to Debtors' Omnibus Claim Objections* (the "Supplement") [Docket # 1351].  The Supplement attached as an exhibit the *Declaration of Steven Kotarba in Support of Debtors' Omnibus Claim Objections*, dated July 15, 2013 (the "Kotarba Declaration").  Mr. Kotarba is a Managing Director in the restructuring group of Alvarez & Marsal, the Debtors' restructuring advisor.  The Second Omnibus Objection categorizes the Claim as an "investment account claim."  The Kotarba Declaration states that the Debtors' books and records show such investment account claims "seek recovery of funds previously exchanged by the claimant for equity interests in Debtors or non-Debtors, necessitating a reduction or even disallowance of the asserted claims."  (Kotarba Decl. ¶ 16.)

In their *Reply in Support of Objection to Proof of Claim of Hani Alsohaibi* [Docket No. 1451], the Debtors provided further evidence.  The reply attaches as an exhibit the *Declaration of Amin Ebrahim Jawad in Support of the Debtors' Objection to Proof of Claim of Hani Alsohaibi*, dated August 21, 2013 (the "Jawad Declaration").  Mr. Jawad is an associate in the investor information management group of Arcapita Bank.  Attached to the Jawad Declaration are copies of Share Purchase Agreements between the Claimant and First Islamic Investment Bank (the predecessor to Arcapita Bank).  These Share Purchase Agreements reflect the Claimant's equity investments in the non-Debtor entities Cirrus Industries, Inc., Bahrain Bay Development B.S.C.(c) and Riffa Views B.S.C.(c).[3]  Also attached as Exhibit 1 to the Jawad

---

[3]    *See* Share Purchase Agreement and Proxy and Appointment of Attorney-in-Fact for Investments in Cirrus Industries, Inc. Through One or More of the Investment Companies, dated January 16, 2005, attached as Exhibit 3 to the Jawad Declaration (the "First Cirrus Share Purchase Agreement"); Share Purchase Agreement and Proxy and Appointment of Attorney-in-Fact for Investments in Cirrus Industries, Inc. Through One or More of the Investment

Declaration is a copy of the Claimant's statement of account (the "Statement of Account"), which reflects all activity in the Claimant's deposit account with Arcapita Bank since inception. Exhibit 2 to the Jawad Declaration is a copy of the Claimant's portfolio statement from Arcapita Bank (the "Portfolio Statement"), which reflects his equity investments in the non-Debtor entities as of June 30, 2013.

The Debtors' pleadings explain – and the Claimant does not dispute – the method by which investments were made through the Debtors in non-Debtor entities. Investments were generally structured through the creation of a Cayman Islands company (a "Transaction Holdco") that would acquire an equity interest in a portfolio target company. The Debtors and their non-Debtor affiliates (collectively, the "Arcapita Group") would retain 20 to 30% of the equity of the Transaction Holdco and would offer the rest for sale to third-party investors through private placements. Arcapita Group would transfer to another Cayman Islands company (a "Syndication Company") the percentage of equity in the Transaction Holdco that it intended to offer for sale. By purchasing shares in the Syndication Companies, the third-party investors acquired a beneficial interest in the Transaction Holdco and an indirect interest in the portfolio company.

The Debtors' evidence demonstrates how this method was used for the investments that are the subject of the Claim. The evidence establishes that, in early 2005, the Claimant invested in Cirrus by paying $1.0 million in exchange for 54,055 shares of a Syndication Company named Fuselage Capital Limited. (*See* Cirrus Share Purchase Agreement 1; Statement of Account at 1.)

---

Companies, dated October 4, 2006, attached as Exhibit 4 to the Jawad Declaration (the "Second Cirrus Share Purchase Agreement"); Share Purchase Agreement and Proxy and Appointment of Attorney-in-Fact for Investments in Bahrain Bay Development B.S.C.(c) Through One or More of the Investment Companies, dated December 17, 2005, attached as Exhibit 5 to the Jawad Declaration (the "Bahrain Bay I Purchase Agreement "); Share Purchase Agreement and Proxy and Appointment of Attorney-in-Fact for Investments in Riffa Golf and Residential Development Company B.S.C.(c) Through One or More of the Investment Companies, dated June 13, 2005, attached as Exhibit 6 to the Jawad Declaration (the "Riffa Views Purchase Agreement").

4

Over a year later, the Claimant invested an additional $300,000 for 16,217 more shares in Fuselage. (*See* Cirrus Share Purchase Agreement 2; Statement of Account at 2.) In 2011, Cirrus was acquired by a company called CAIGA MS Co. Ltd. through a merger transaction. On or about May 2011, the Claimant received $260,000 in exchange for his Fuselage stock, representing his pro rata share of the proceeds of the merger consideration. (*See* Statement of Account at 3.)

The Debtors' evidence also establishes that, sometime in late 2005 to early 2006, the Claimant obtained an interest in the second non-debtor entity, Bahrain Bay, by investing $100,000 in each of the four Syndication Companies knows as WaterBay Capital Limited, WaterFront Capital Limited, WaterWay Capital Limited and WaterSide Capital Limited. (*See* Bahrain Bay I Share Purchase Agreement; Statement of Account at 1.) In return, the Claimant received 2,857.25 shares in each Syndication Company, for a total investment of $400,000 for 11,429 shares of stock. Bahrain Bay is an ongoing project, and the Claimant continues to hold his shares of stock in the Syndication Companies. (*See* Portfolio Statement at 2.) Near the end of 2007, the Claimant received a return of capital of $125,719 and in mid-2008, a return of capital of $114,061.42. (*See* Statement of Account at 3.) The Claimant therefore has a net investment of $160,219.58 in the Syndication Companies relating to Bahrain Bay and according to the Debtors he will share in any further returns that are distributed to shareholders. (*See* Portfolio Statement at 2.)

Finally, the Debtors' evidence establishes that in 2005 and 2006, the Claimant obtained his interest in the third non-Debtor entity, Riffa Views, by investing $213,120.83 in each of the Syndication Companies known as Delmon Lifestyle Capital Fund and Awal Lifestyle Capital Limited in exchange for 15,009 shares of each. (*See* Riffa Views Share Purchase Agreement;

Statement of Account at 1.)  This amounted to a total investment of $426,241.66 for 30,018 shares of stock.  Riffa Views is also an ongoing project, and the Claimant continues to hold his shares in these Syndication Companies.  (*See* Portfolio Statement at 2.)  On or about June 2008, the Claimant received a return of capital of $98,459.04 and therefore has a current net investment of $327,782.62 in the Riffa Views-related Syndication Companies.  (*See* Statement of Account at 3; Portfolio Statement at 2.)  According to the Debtors, the Claimant will share in any further returns that are distributed to these shareholders.[4]

Given all this evidence, it is clear that the Claim is based not on an obligation of the Debtors but rather on Claimant's equity in these three non-Debtor entities.  Such interests are an insufficient basis for the Claim.  *See, e.g., In re MarketXT Holdings, Corp.*, 2008 Bankr. Lexis 5038, at *6-*7 (Bankr. S.D.N.Y. Jan. 3, 2008) (disallowing a claim marked "investment" that sought the return of the amount paid for stock in the debtor and noting that "[i]t is axiomatic that an allowed proof of claim requires something more than mere equity ownership.").  This evidence is, therefore, sufficient to refute the *prima facie* validity of the Claim.  Presented with this evidence by the Debtors, the Claimant has failed to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *In re Oneida, Ltd.*, 400 B.R. at 389.[5]

---

[4]  Indeed, as the Debtors note, "any right to a distribution on account of a claimant's equity investment remains full enforceable against the applicable [companies]" in which he invested.  (Reply at 8.)

[5]  In light of this evidence, the Court rejects the Claimant's contention that the Defendants have failed to produce sufficient evidence to rebut the *prima facie* validity of the Claim.  The Claimant appears to contend that the Supplement – and presumably the Kotarba Declaration – is inapplicable to the Claim, stating that the Supplement "concerns claims other than the Proof of Claim, the Debtors and the Claimant having agreed to adjourn the hearing with respect to the Proof of Claim." (Response ¶ 3.)  It is true that the Supplement did not ask for the immediate entry of an order relating to the Claim and ultimately adjourned the disposition of the Claim to a future date.  Despite this, it is clear that the Kotarba Declaration itself encompasses all proofs of claim included in the First, Second and Third Omnibus Claim Objections, including the one filed by Claimant.  (*See* Supplement ¶ 11; Kotarba Decl. ¶ 2, 8.)

Moreover, this conclusion is consistent with the Claim itself, which lists the basis of the Claim as "corporate investment," and seeks the return of the Claimant's current net investment for Bahrain Bay and Riffa Views, as well as what appears to be the remainder of the original investment made in Cirrus Aircraft for which the Claimant did not receive a return subsequent to the sale of the company. The Claim also attaches a portfolio statement, two statements of account and a one page summary of accounts; all of these support the conclusion that these were private equity and real estate investments in non-Debtor entities.[6]

Finally, with respect solely to the Cirrus investment, the Claim includes additional language hinting at an alternative basis for recovery. The summary that the Claimant attached to the Claim for states that the

> Cirrus Aircraft Investment was profitable for more than 8 years with not a single dividends payment to investors but many dividends payments were made to primary shareholders on investment and then they claimed that they lost all the money on the company sale.

(*See* Proof of Claim, attached to the Debtors' Reply as Exh. A.) But this fails to assert any viable theory of liability as against the Debtors. "Although nothing prohibits an equity security holder from filing a claim for fraud or other damages in connection with the purchase of a security, . . . in [the Claim, the Claimant] raises no issue of breach of contract or fraud giving rise to damages. For this reason, on this record, the proofs of claim that [the Claimant] filed should be disallowed as such." *Hasson v. Motors Liquidation Company GUC Trust (In re Motors Liquidation Company)*, 2012 U.S. Dist. LEXIS 72728, at *11-*12 (S.D.N.Y. May 21, 2012). Neither the Claim nor the Claimant's response provide any factual or legal basis for anything other than an equity based interest against non-Debtor entities. This is true despite discussion of

---

[6] To the extent that two of the investments for which the Claimant seeks payment – Bahrain Bay and Riffa Views – are still active, allowing the proof of claim would amount to a double recovery because the Claimant will also continue to share in the returns that are distributed to shareholders.

7

this deficiency in the Debtor's Reply. (*See* Reply at 6, 8.) Claimant's counsel chose not to provide any argument on this issue at the hearing, instead resting on the papers.[7]

### 1. Federal Rule of Civil Procedure 44.1

The Claimant argues that the objection should be denied for three reasons. As explained below, the Court rejects each of these arguments.

The Claimant's first argument is that the Debtors have failed to comply with Federal Rule of Civil Procedure 44.1. Made applicable to bankruptcy cases through Rule 9017 of the Federal Rules of Bankruptcy Procedure, Rule 44.1 requires that a party provide notice when raising an issue of foreign law:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

The Claimant argues that Debtors here failed to provide notice to the extent they intend to rely on the foreign law governing the contractual relationships between Arcapita and the Claimant. (Response ¶ 10.) But the Debtors are not relying on foreign law. Rather, the Debtors' objection specifically seeks relief under Section 502(b) of the Bankruptcy Code, which provides in part that

> [I]f [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.

---

[7]   Even assuming that the Claimant had invested in Debtor entities, an equity interest in a debtor "is not a claim against the debtor for which the equity holder may assert a right to payment by filing a proof of claim." *Hasson*, 2012 U.S. Dist. LEXIS 72728, at *11-*12 (internal citations and quotations omitted). Rather, such an equity interest constitutes ownership of the Debtor and is covered by the filing of a proof of interest under Section 501 of the Bankruptcy Code and Fed.R.Bankr.P. 3003.

11 U.S.C. § 502(b)(1).[8]

### 2. Choice of Law

The Claimant next argues that the objection should be overruled because it is inconsistent with the choice of forum and law set forth in the contracts between Arcapita and the Claimant. The Claimant here relies upon the Application and Agreement for the Opening of an Investment Account with First Islamic Bank, which Claimant executed in 2005 and which purportedly provides:[9]

> This Agreement shall be governed by and construed in accordance with the laws of the Kingdom of Bahrain to the extent such laws are not inconsistent with the laws of Islamic Shari'ah and each of the parties hereto irrevocably agrees for the benefit of First Islamic that the Courts of Bahrain shall have jurisdiction for the purpose of any proceeding arising out of or in connection with this Agreement and, for such purposes, irrevocably submits to the exclusive jurisdiction of such courts.

The Claimant also relies on the Shareholder Purchase Agreements for Bahrain Bay and Riffa Golf, each of which is attached to the Jawad Declaration as Exhibits 5 and 6, respectively. Both of these agreements state:

> I/We understand and agree that the laws of the Cayman Islands shall govern this Share Purchase Agreement and the Investment; I/we understand and agree that any litigation or proceeding brought by me/us under or in relation to this Share Purchase Agreement and/or the Investment shall be brought exclusively in the courts of the Cayman Islands. I/We hereby waive any and all rights that I/we may have to transfer or change the venue of any such litigation or proceeding.

As a threshold matter, the Court notes that the agreements cited by Claimant provide for two different overseas venues. In any event, neither of these agreements are controlling on this question. "[I]n filing a proof of claim the petitioner submits to the bankruptcy court's equitable

---

[8] Even if the Debtors were asserting foreign law, it appears that the more appropriate penalty for failure to provide the required notice would be waiver of the ability to rely on such foreign law given that the Rule is meant to avoid unfair surprise to the parties. *See* Moore's Federal Practice § 44.1.03[2] (3d ed. 2013) (citing *Clarkson Co. v. Shaheen*, 660 F.2d 506, 512 n.4 (2d Cir. 1981); *Hodson v. A.H. Robins Co.*, 528 F. Supp. 809, 824 (E.D. Va. 1981), *aff'd*, 715 F.2d 142 (4th Cir. 1983)). But no such foreign law has been identified by the Debtors.

[9] The Claimant does not attach a copy of the agreement, but sets forth the relevant language in his Response.

9

jurisdiction." *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 707 (2d Cir. 2005). Thus, courts in this jurisdiction have held that:

> [A]lthough there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core. Transferring a core matter that is not 'inextricably intertwined' with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court. . . . [Thus] a debtor-in possession . . . is not bound by a forum selection clause in an agreement provided the litigation at issue amounts to a core proceeding and is not inextricably intertwined with non-core matters.

*Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 837 (S.D.N.Y. 2002) (internal citations and quotations omitted).[10] Under 28 U.S.C. § 157(b)(2)(B), a claim objection is a core proceeding. This Court has not been made aware of any other pending proceedings between the Debtors and the Claimant in another jurisdiction. Thus, this objection is not so "inextricably intertwined" with other litigation that it would necessitate transfer of the objection in contravention of the strong public policy interest in centralizing the core matters in this bankruptcy proceeding within this Court.

### 3. Cirrus Contract

The Claimant's final argument is that the parties' contractual rights with respect to the Cirrus investment are unknown at this time. While the precise legal argument is vague on this point, Claimant appears to rely upon its contention that the investment contracts between the Claimant and Arcapita were entered into in Saudi Arabia, but the signature block for one of the contracts with respect to Cirrus states that it was executed in Lebanon. (*See* Jawad Decl., Ex. 3.)

---

[10] The Claimant also cites to the case of *D.E. Frey Group, Inc. v. FAS Holdings, Inc. (In re D.E. Frey Group, Inc.)*, 387 B.R. 799 (D. Col. 2008), which held in favor of enforcing forum selection clauses in the context of core bankruptcy proceedings. But courts in this jurisdiction do not follow the reasoning of *D.E. Frey*. *See, e.g., Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 330 (S.D.N.Y. 2010).

The Claimant argues that, by virtue of this fact, the parties' respective rights are unknown at this time as to the portion of the Claim attributable to the Cirrus investment.

The Court disagrees. The Claimant admits that he made the investments in the amounts listed on the First Cirrus Share Purchase Agreement. Moreover, the Debtors have represented that they have no other Share Purchase Agreements with the Claimant in their records and the Claimant has produced absolutely no evidence to the contrary. *See* Fed.R.Bankr.P. 3001(c)(1). ("[W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim"). Nor does the Claimant dispute that he made the Cirrus investment in question. Most importantly, the Claimant has not explained why or how the potential evidentiary issue he raises would in any way impact the fact that his Claim is based upon an equity investment in a non-Debtor entity. Indeed, it would seem that the location in which Claimant signed the agreement would have no impact on the facts relevant for resolving this Objection.

## **CONCLUSION**

For all the reasons set forth above, the Court grants the Debtors' objection to the Claim and reduces the amount of the Claim to the $148.91 held in an account by the Debtors.

**IT IS SO ORDERED.**

Dated: New York, New York
        November 21, 2013

                                */s/ Sean H. Lane*
                                UNITED STATES BANKRUPTCY JUDGE