1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case Nos. 12-11076-shl

4  - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  ARCAPITA BANK B.S.C.(C), et al,

8

9      Debtors.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12          U.S. Bankruptcy Court

13          One Bowling Green

14          New York, New York

15

16          September 30, 2014

17          11:51 AM

18

19

20  B E F O R E :

21  HON SEAN H. LANE

22  U.S. BANKRUPTCY JUDGE

23

24

25

Page 2

1   Modified Bench Ruling re:  Doc. #1979 Objection Of Captain Hani Alsohaibi

2   To The Proposed Diversion Of Funds By And For The Benefit Of

3   The First Islamic Investment Bank B.S.C.(C)/Arcapita Bank

4   B.S.C.(C) Affiliates And Successors And Reservation Of

5   Rights And Request For Hearing Concerning The Administrative

6   Solvency/Insolvency Of The First Islamic Investment Bank

7   B.S.C.(C)/Arcapita Bank B.S.C.(C) Affiliates And Successors

8   Filed By Tally M. Wiener On Behalf of Hani Alsohaibi

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1  A P P E A R A N C E S :

2  MILBANK, TWEED, HADLEY & MCCLOY LLP

3      Attorneys for the Reorganized Debtors

4      One Chase Manhattan Plaza

5      New York, NY 10005-1413

6

7  BY:  EVAN R. FLECK, ESQ.

8      NICHOLAS C. KAMPHAUS, ESQ.

9

10  LAW OFFICES OF TALLY M. WIENER

11      Attorney for Captain Hani Alsohaibi

12      119 West 72nd Street

13      PMB 350

14      New York, NY 10023

15

16  BY:  TALLY M. WIENER, ESQ.

17

18

19

20

21

22

23

24

25

Page 4

1          Before the Court is an application that is styled

2   objection of Captain Hani Alsohaibi to the proposed

3   diversion of funds by and for the benefit of First Islamic

4   Investment Bank B.S.C./Arcapita Bank B.S.C. affiliates and

5   successors and reservation of rights.  It goes on to request

6   a hearing concerning the "administrative insolvency" of The

7   First Islamic Investment Bank B.S.C./Arcapita Bank B.S.C.

8   affiliates and successors.  It's found at Docket No. 1979.

9          I also have before me an opposition by the

10   reorganized debtors to that application, as well as a reply

11   that was filed on the docket.

12          The objection complains of the alleged proposed

13   diversion of funds.  It says that Arcapita seeks relief from

14   payment obligations owing under a Murabaha

15   agreement among Arcapita Investment

16   Holding Limited, Goldman Sachs International, and

17   other entities.  It goes on to say that Arcapita seeks a

18   waiver from Goldman to divert $5 million that it would

19   otherwise be obligated to pay to service its loan.  It goes

20   on to complain that Arcapita is administratively insolvent.

21   And all of these statements need to be understood in the

22   context of the current posture of this case and so

23   some background is in order.

24          The debtors' assets here primarily consisted of

25   investments in operating companies and other portfolio

Page 10

1   assets, including interests in joint ventures.  Approximately

2   70 percent of the debtors' investments related to operating

3   companies or other portfolio assets in which the debtors

4   held directly or indirectly only minority

5   equity interests.  The balance of the debtors'

6   investments related to operating companies and other

7   portfolio assets in which the debtors held directly or

8   indirectly 50 percent or more of the interests.

9        The plan of reorganization in this case that was

10  put before the Court and ultimately confirmed proposed to

11  establish a New Cayman Islands holding company, New Arcapita

12  Topco, to own and control a series of newly formed

13  intermediate holdings companies and subsidiaries, the new

14  holding companies.

15       The plan provided that the new holding companies

16  would own directly or indirectly 100 percent of the debtors'

17  assets, and in exchange for their allowed claims the

18  majority of the debtors' unsecured creditors would receive a

19  pro rata share of the new Sharia-compliant Sukuk facility,

20  substantially all of the equity of the new

21  holding companies and certain warrants issued by New

22  Arcapita Topco.

23       The reorganized Arcapita Group,

24  with the assistance of AIM Group Ltd., would

25  wind down its operations.  Reorganized Arcapita Group

Page 11

1   would make distributions from the exits of investments which

2   would occur in a manner and at a time that maximized returns

3   and would be consistent with the terms of the cooperation

4   agreement, as that term is used in the plan.

5        The business plan provided for the retention of

6   AIM, which was a newly formed investment management company,

7   to manage the investment assets on a day-to-day basis.

8        These are only the top level details of the plan

9   which are set forth in far more detail in the confirmation order

10  and the plan, but are provided here only to give some

11  general sense of what happened in the case.

12       The plan was confirmed and a confirmation order

13  entered on June 17, 2013, the effective date of that plan

14  was September 17, 2013.

15       Given all of these facts, the Court is going to

16  deny the application before it for relief.

17       Although the application is styled as an objection to a proposed

18  course of action by the reorganized debtors, in fact

19  there's no current request that has been made by the reorganized

20  debtors to this Court to do anything.  In fact, the Arcapita

21  case has been confirmed, so this objection is talking about

22  obligations of a reorganized debtor that is not in

23  bankruptcy court.  In fact, the reorganized debtors

24  explain that the injunctive relief requested by the objector here is to prevent

25  RA Holdco 2 LLC and its co-obligors under a court-approved

Page 12

1   exit financing from obtaining a waiver of certain terms.

2        The reorganized debtors state, and I agree, that

3   this is an agreement between private parties, neither of

4   whom is in bankruptcy, and so the action here does not

5   require court approval.

6        There's some reference by the objector here that

7   the terms of the exit financing documents must be honored.

8   So, for example, the objector cites to paragraph 10(b)(iii)(B) of the final order

9   approving the exit financing that says certain modifications require

10  court approval such as those that "increase the commitments

11  or the rate of profit or fees payable thereunder," and

12  that's discussed at the reply at page 11.  But there's been

13  no showing that the waiver of the condition at issue here in

14  any way triggers that requirement or any other obligation

15  under the exit financing.

16        In fact what appears to be at issue is a request

17  to waive a prepayment, that is an ability to not have to

18  honor one particular condition, but which in fact would change

19  nothing else in the obligation.  So what it essentially

20  does is channel funds to the reorganized debtors to use as

21  they see fit, which the reorganized debtors

22  note is something that is being done in

23  the business judgment of the reorganized debtor and does not

24  require court approval.

25        There's been some discussion in the papers about

Page 13

1  the financial health of the reorganized debtors.  I don't

2  need to resolve this issue to rule on the application that

3  is in front of me, but I do think it is important to note that the

4  reorganized debtors strongly disagree with the views of

5  Captain Hani Alsohaibi on that subject.  On this topic, they note

6  three things.

7          One is that the reorganized debtors sought

8  and obtained 100 percent consent of the applicable lenders for

9  the waiver of certain aspects of the prepayment provision of

10  the exit facility; second, they note that it increased, from their

11  point of view, liquidity for the reorganized debtors between

12  asset sales; and third, that from their point of view

13  they're doing better than projections set forth in the

14  disclosure statement.

15          There's also a request here to take down, so to

16  speak, a particular website, www.arcapita.com, and to

17  mandate that the case administration website should be kept

18  up to date.

19          As the reorganized debtors note, the website for

20  Arcapita was transferred to the AIM Group Ltd. as part of

21  the plan and there has been nothing identified to this Court

22  that's in the confirmation order or the plan that has been

23  violated regarding the use of the website or any other

24  aspect relating to the website, including the maintenance of

25  the case administration website.  Nothing has been

Page 14

1 identified to me as violating the terms of any court order or

2 matter approved by the Court.  So, that deals with

3 the issues going forward.

4        To the extent that the application seeks to

5 revisit any terms of the confirmation order I'm going to

6 deny that request.   A bankruptcy court's order of confirmation is

7 treated as a final judgment with res judicata effect.  *See In*

8 *re Indesco International, Inc.*, 354 B.R. 660, 664

9 (Bankr. S.D.N.Y. 2006).  "Any attempt by the parties or

10 those in privity with them to relitigate any of the matters that were raised

11 or could have been raised therein is barred under the

12 doctrine of res judicata."  *Sure-Snap Corporation v. State Street Bank &*

13 *Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991).

14        Courts have considered confirmation of a plan in a

15 Chapter 11 proceeding to be an event comparable to the entry

16 of a final judgment in ordinary civil litigation.  *See*

17 *Silverman v. Tracar, S.A.*, 255 F.3d 87, 92 (2d Cir. 2001).

18        So for all those reasons given the record in

19 front of me on the application as well as the record of the

20 case, and that is the plan confirmation and the terms of

21 that plan, I'm going to reject the application.

22        With all that said I'd ask that the

23 reorganized debtors submit a proposed order addressing the

24 pending application and just make it clear that it's being

25 denied for the reasons stated on the record at the hearing.