**UNITED STATES BANKRUPTCY COURT**　　　　　<u>FOR PUBLICATION</u>
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re　　　　　　　　　　　　　　　　　　　　　　Chapter 11

ARCAPITA BANK B.S.C.(c), *et al.*　　　　　　　　Case No. 12-11076 (SHL)

　　　　　　　　　Reorganized Debtors.　　　　　(Confirmed)
-----------------------------------------------------------------x

## <u>MEMORANDUM OF DECISION</u>

**A P P E A R A N C E S :**

**MILBANK LLP**
*Counsel for the Official Committee of*
*Unsecured Creditors of Arcapita Bank B.S.C.(c), et al.*
55 Hudson Yards
New York, New York 10001
By:　　Dennis F. Dunne, Esq.
　　　　Evan R. Fleck, Esq.

　　　-and-

1850 K Street, NW, Suite 1100
Washington, D.C. 20006
By:　　Andrew M. Leblanc, Esq.
　　　　Samir L. Vora, Esq.

**K&L GATES LLP**
*Counsel for Bahrain Islamic Bank*
599 Lexington Avenue
New York, New York 10022
By:　　John A. Bicks, Esq.

　　　-and-

1601 K Street, NW
Washington, D.C. 20006
By:　　Brian D. Koosed, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of the official committee of unsecured creditors in the

above-captioned case (the "Committee") to hold Bahrain Islamic Bank ("BisB") in contempt for

willful violation of the automatic stay imposed by Sections 362(a)(3) and 362(a)(7) of the

Bankruptcy Code. *See Off. Comm. of Unsecured Creditors' Mot. For an Order Holding Bahr.*

*Islamic Bank and Tadhamon Capital B.S.C. in Civil Contempt* [ECF No. 2223][1] (the "Contempt

Motion").[2]  The Committee asks that the Court hold BisB in civil contempt under Section 105(a)

of the Bankruptcy Code and the Court's inherent contempt powers.  The Committee seeks

sanctions in the amount of its reasonable attorneys' fees and costs incurred as a result of BisB's

violation of the stay, including fees and costs related to the Contempt Motion.  BisB opposes the

Contempt Motion, asserting that its actions were not objectively unreasonable under the

circumstances.   For the reasons set forth below, the Contempt Motion is granted.

## BACKGROUND

The legal dispute between BisB and the Committee has been lengthy, involving

numerous decisions from this Court, and at the appellate level, that culminated in the issuance of

an extensive decision on summary judgment holding in favor of the Committee on all counts.

*See Off. Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahr. Islamic Bank (In re*

*Arcapita Bank B.S.C.(c))*, 628 B.R. 414 (Bankr. S.D.N.Y. 2021), *aff'd* 640 B.R. 604 (S.D.N.Y.

---

[1]      Unless otherwise indicated, references in this Memorandum of Decision to docket entries on the Case Management/Electronic Case Files ("ECF") system are to Case No. 12-11076.

[2]      The Contempt Motion was filed against both BisB and Tadhamon Capital B.S.C.  The Committee subsequently withdrew the Contempt Motion as to Tadhamon Capital B.S.C.  *See Notice of Withdrawal of Mot. For Civil Contempt as Against Tadhamon Capital B.S.C.* [ECF No. 2235].

2022).[3]  While familiarity with the underlying facts of this matter is presumed, a brief review of

the main facts is essential to understanding the merits of the Contempt Motion.

Prior to its Chapter 11 filing, Arcapita Bank B.S.C. and certain of its affiliates

("Arcapita" or the "Debtors") were licensed as an Islamic wholesale bank by the Central Bank of

Bahrain and operated as an investment bank and global manager of Shari'a-compliant alternative

investments.  *See id.* at 423.  BisB is a Bahraini corporation that operates as an Islamic

commercial bank and is headquartered in Bahrain.  *See id.*

Arcapita maintained a prepetition business relationship with BisB, through which

Arcapita and BisB made several Shari'a-compliant short-term investments with one another.  *See

id.* at 423-29; *see also* Exh. A to *Decl. of Samir L. Vora in Supp. of the Off. Comm. of Unsecured

Creditors' Mot. for an Order Holding Bahrain Islamic Bank and Tadhamon Capital B.S.C. in

Civil Contempt* [ECF No. 2224] (the "Vora Declaration").  Upon its bankruptcy filing in March

2012, Arcapita attempted to recover the transaction proceeds of certain of its investments with

BisB.  *See In re Arcapita,* 628 B.R. at 429.  These attempts included a letter sent by Arcapita's

bankruptcy counsel to BisB in April 2012, citing to the automatic stay imposed by Arcapita's

bankruptcy filing under Section 362 of the Bankruptcy Code.  *See id.*; *see also* Letter of Gibson

Dunn, dated April 30, 2012, attached as Exh. D to Vora Decl.  The letter demanded payment of

the investment proceeds as property of Arcapita's bankruptcy estate under Section 542 of the

Bankruptcy Code.  *See id.*

---

[3]      Numerous motions also have been decided by this Court on various threshold issues that include, among
other things, personal jurisdiction, international comity, and the extraterritorial application of several sections of the
Bankruptcy Code.  *See, e.g., Off. Comm. of Unsecured Creditors of Arcapita Bank B.S.C.(c) v. Bahr. Islamic Bank
(In re Arcapita Bank B.S.C.(c)),* 633 B.R. 207 (Bankr. S.D.N.Y. 2021); *Off. Comm. of Unsecured Creditors v. Bahr.
Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita Bank B.S.C.(c)),* 2018 WL 718399 (Bankr. S.D.N.Y.
Feb. 5, 2018); *Off. Comm. of Unsecured Creditors v. Bahr. Islamic Bank and Tadhamon Capital B.S.C. (In re
Arcapita Bank B.S.C.(c)),* 575 B.R. 229 (Bankr. S.D.N.Y. 2017); *Off. Comm. of Unsecured Creditors v. Bahr.
Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita Bank B.S.C.(c)),* 529 B.R. 57 (Bankr. S.D.N.Y. 2015),
*rev'd,* 549 B.R. 56 (S.D.N.Y. 2016).

But BisB did not return the funds.  Instead, counsel to BisB responded by letter in June 2012, asserting that BisB was exercising a purported right to a setoff of the transaction proceeds under Bahraini law against the debts owed to it by Arcapita.  *See In re Arcapita,* 628 B.R. at 429–31; *see also* Letter of K&L Gates, dated June 28, 2012, attached as Exh. F to Vora Decl. This setoff totaled approximately $10,002,291.66.  *See id.*  Despite taking place after Arcapita's bankruptcy filing, BisB neither sought nor obtained approval from this Court to exercise a setoff of any kind.  *See In re Arcapita*, 628 B.R. at 429.

In July 2012, the Central Bank of Bahrain (the "CBB"), which regulates Bahrain's financial sector,[4] issued a formal direction to BisB.[5]  *See* Formal Direction, dated July 4, 2012, attached as Exh. H to Vora Decl.  The CBB provided its formal direction to BisB through a letter to BisB's then-CEO, dated July 4, 2012.  *See In re Arcapita*, 628 B.R. at 430.  The formal direction stated that the CBB:

> hereby directs your Bank to exercise one of the following options: (i) that your Bank complies with the request to release the funds and returns the funds immediately to Arcapita Bank B.S.C. (c), or (ii) that your Bank seeks permission from the US Bankruptcy Court (in accordance with the US Bankruptcy Code), prior to affecting any set-off, and if such permission is not granted, that your Bank returns the funds that it holds for the account of Arcapita Bank B.S.C. (c) immediately.

Formal Direction, dated July 4, 2021, attached as Exh. H to Vora Decl.; *see also In re Arcapita*, 628 B.R. at 429-30.  BisB did not comply with the CBB's formal direction and the funds were not turned over to Arcapita.  *See In re Arcapita*, 628 B.R. at 428-30.

In August 2013, the Committee filed an adversary proceeding against BisB [Adv. No. 13-01434] (the "Adversary Proceeding"), seeking, among other things, turnover of the investment

---

[4]      The CBB is the sole regulator of Bahrain's financial sector and is in charge of the licensing, regulation and supervision of parties carrying out regulated financial services in Bahrain.  *See In re Arcapita*, 628 B.R. at 429-30.

[5]      A formal direction is a tool used by the CBB in its regulation of Bahraini financial institutions.  *See id.* at 440-41.  Under Bahraini law, formal directions are binding on those to whom they are issued.  *See id.*

proceeds in question, damages for breach of contract and violation of the automatic stay, and

claims disallowance. *See id.* at 430–31.[6]  After extensive motion practice that included one

appeal,[7] this Court issued a *Memorandum of Decision* in the Adversary Proceeding in April 2021

(the "Summary Judgement Decision"), which granted the Committee's request for summary

judgment and denied BisB's cross-motion for summary judgment. *See generally In re Arcapita,*

628 B.R. 414.  The Summary Judgment Decision granted judgment on the Committee's claims

for breach of contract under Bahraini law and for turnover of the transaction proceeds under

Section 542(b) of the Bankruptcy Code, and rejected BisB's cross-motion for summary

judgment, including BisB's arguments that, among other things, its setoff was authorized under

Bahraini law and that it was entitled to protection under the safe harbors of the Bankruptcy Code.

*See id*.

Of particular relevance to the present Contempt Motion, the Summary Judgment

Decision also granted summary judgement on the Committee's claim for violation of the

automatic stay under Section 362(a) of the Bankruptcy Code. *See id.* at 479–481.  More

specifically, the Summary Judgement Decision held that BisB had violated Section 362(a)(3) of

the Bankruptcy Code, which provides that the filing of a bankruptcy petition "operates as a stay,

applicable to all entities, of . . . any act to obtain possession of property of the estate or of

property from the estate or to exercise control over property of the estate. . . ."  *In re Arcapita,*

628 B.R. at 479-80 (quoting 11 U.S.C. § 362(a)(3)).[8]  Specifically, the Court found that BisB's

declaration of a setoff and its refusal to return the receivables to Arcapita upon request was an

---

[6]      *See generally* Compl. [Adv. No. 13-01434, ECF No. 1].

[7]      *See Off. Comm. of Unsecured Creditors of Arcapita, Bank. B.S.C. v. Bahr. Islamic Bank.* 549 B.R. 56 (S.D.N.Y. 2016); *see also supra*, n.3

[8]      The Court also noted that Section 362(a)(7) of the Bankruptcy Code prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case . . . against any claim against the debtor." *In re Arcapita*, 628 B.R. at 480 n.68 (quoting 11 U.S.C. § 362(a)(7)).

improper exercise of control over property of Arcapita's estate. *See id.* at 480. The Court also found that BisB was fully aware of the existence of the automatic stay at the time the setoff was taken, having previously received and responded to a letter from Arcapita's bankruptcy counsel discussing the imposition of the stay by Arcapita's bankruptcy filing and demanding payment of the investment proceeds as property of Arcapita's bankruptcy estate. *See id.* Additionally, the Court noted that BisB had advice of U.S. bankruptcy counsel at the time it asserted the setoffs and exercised its setoffs without first seeking this Court's approval. *See id.* at 480-81. BisB also continued to maintain the setoffs in direct contravention of the CBB's formal direction that required it to either return the funds to Arcapita or obtain this Court's approval to retain them. *See id.*

But while the Court found BisB's stay violation was willful, the Court also observed that relief under Section 362(k) was limited to natural persons and unavailable to corporate debtors. *See id.* (citing *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 184-87 (2d Cir. 1990) ("We now hold that a bankruptcy court may impose sanctions pursuant to [Section] 362(h) [now Section 362(k)] . . . only for violating a stay as to debtors who are natural persons. . . . For other debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay."); *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*, 542 B.R. 121, 141 n.83 (Bankr. S.D.N.Y. 2015) ("In the Second Circuit, corporate debtors do not have a private right of action for stay violations under [S]ection 362(k) (formerly [S]ection 362(h)), and seek and obtain relief for automatic stay violations by means of contempt."). Accordingly, the Court denied the Committee's request for damages and attorneys' fees under Section 362(k) of the Bankruptcy Code. *See id.* at 481.

In the aftermath of the Summary Judgment Decision, the Committee filed the Contempt Motion seeking attorneys' fees and costs for violation of the automatic stay, this time relying on a different legal theory—civil contempt—for its request. After the Contempt Motion was filed, the Summary Judgment Decision was affirmed by the District Court. *See Bahr. Islamic Bank v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, 640 B.R. 604 (S.D.N.Y. 2022).

## DISCUSSION

### A. The Applicable Legal Standard

The automatic stay made operable by Section 362 of the Bankruptcy Code is one of a debtor's key protections in bankruptcy. *See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). It is meant to provide "complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." *SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (quoting *Penn Terra Ltd. v. Department of Envtl. Resources*, 733 F.2d 267, 271 (3d Cir. 1984)). "By its very terms, no action by any court is necessary for the stay to take effect." *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992).

Importantly, the automatic stay allows the bankruptcy court "to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Brennan*, 230 F.3d at 70 (quoting *In re United States Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999)). "[S]o central is the [Section] 362 stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect." *In re Colonial Realty Co.*, 980 F.2d at 137 (citations and quotations omitted); *see also Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *In re Signature Apparel Grp.*, 577 B.R. 54, 88 (Bankr. S.D.N.Y. 2017) ("Actions taken in violation of the

automatic stay are void.").  The automatic stay also clearly applies extraterritorially.  *See In re*

*Arcapita*, 575 B.R. 229, 250-51 (rejecting BisB's argument that the Section 362 did not apply

extraterritorially); *see also Bernard L. Madoff Inv. Sec.*, 474 B.R. at 82 ("[T]he efficacy of the

bankruptcy proceeding depends on the court's ability to control and marshal the assets of the

debtor wherever located.") (quoting *Underwood v. Hillard (In re Rimstat, Ltd.)*, 98 F.3d 956, 961

(7th Cir. 1996)).  "[T]he United States has a strong interest in adjudicating claims that arise

under its Bankruptcy Code so that both creditors and debtors can obtain the remedies and relief

that the United States Congress has determined are fair and equitable. . . . Indeed, it does not

seem prudential to allow foreign creditors to potentially obtain priority over domestic creditors

based simply on their foreign status."  *In re Arcapita*, 549 B.R. 71-72.

      "[T]he automatic stay has the effect of a court order for purposes of the contempt power. .

. ."  *Windstream Holdings, Inc. v. Charter Communs. Inc. (In re Windstream Holdings, Inc.)*, 627

B.R. 32, 39 (Bankr. S.D.N.Y. 2021) (citing *In re Chateaugay Corp.*, 920 F.2d at 187; *Knupfer v.*

*Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003) ("Because the metes and bounds of

the automatic stay are provided by statute and systematically applied to all cases, there can be no

doubts that the automatic stay qualifies as a specific and definite court order.")).  Moreover, the

automatic stay is self-executing and is "effective immediately upon the filing of the petition."

*Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *Morgan Guar. Trust Co.*

*v. Hellenic Lines*, 38 B.R. 987, 998 (S.D.N.Y. 1984) ("The stay is effective upon the date of the

filing of the petition and formal service is not required.").

      In this Circuit, sanctions for violation of the automatic stay where the debtor is not a

natural person derive from two sources: (1) Section 105(a) of the Bankruptcy Code, which

provides that a court "may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of" the Bankruptcy Code, and (2) the Court's inherent contempt powers. 11 U.S.C. § 105(a); *see also In re Chateaugay Corp.*, 920 F.2d at 187. In determining whether to hold a party in civil contempt, a federal court must consider if that party had notice of the court order in question and complied with that order. *See In re Residential Cap., LLC*, 571 B.R. 581, 585 (Bankr. S.D.N.Y. 2017). "[W]ith respect to compliance with a specific order, the court may impose civil contempt only where (1) the underlying order is clear and unambiguous, (2) proof of non-compliance is clear and convincing, and (3) the contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Id*. Courts can award three types of sanctions under their civil contempt powers for breach of the automatic stay (1) coercive sanctions to encourage compliance, (2) damages for monetary harm, and (3) punitive sanctions in appropriate circumstances. *See In re Windstream*, 627 B.R. at 47-48 (collecting cases). The Committee here does not seek coercive or punitive sanctions from BisB. Rather, the Committee limits its request for damages to the reasonable attorneys' fees and costs incurred by the Committee for BisB's violation of the automatic stay, including fees and costs incurred with respect to the Contempt Motion.

In *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), the Supreme Court recently clarified that a finding of bad faith or willfulness is not required when a court exercises its inherent civil contempt powers to address violations of the bankruptcy discharge injunction. *See In re Windstream*, 627 B.R. at 39 (citing *Taggart*, 139 S. Ct. at 1802); *see also Dibattista v. Selene Fin. L.P. (In re Dibattista)*, 615 B.R. 31, 39 (S.D.N.Y. 2020) (noting that the necessity of finding a willful violation of the discharge injunction to hold a party in contempt "does not seem to survive *Taggart*, where the Court held that 'the absence of willfulness does not relieve [a party] from civil contempt.'"). The Supreme Court has cautioned that "civil contempt should not be

9

resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's

conduct." *Taggart*, 139 S. Ct. at 1801 (internal citations and quotations omitted).  But as the

standard is an objective one, a party's subjective belief will not insulate them from civil

contempt where such belief was objectively unreasonable.  *See id.* at 1802.  "Any issue in the

Second Circuit whether a greater showing is required when applying the Court's contempt

power, such as of malice or bad faith, for violation of the stay . . . appears to be resolved by

*Taggert* in the negative."  *In re Windstream*, 627 B.R. at 40 (concluding that it is unlikely that

the Supreme Court would apply a more lenient standard to alleged violations of the automatic

stay than "fair ground of doubt").[9]

## B.  BisB's Violation of the Automatic Stay Was Contemptuous

Applying these standards here, the Court holds that BisB should be held in civil contempt

for its breach of the automatic stay.  First, as explained in detail in the Court's Summary

Judgement Decision, BisB's actions were in conflict with a clear and unambiguous court order,

specifically the imposition of the automatic stay as a result of Arcapita's bankruptcy filing.[10]  *Cf.*

---

[9]      In *Taggart*, the Supreme Court addressed the appropriate contempt standard in the context of  a violation of the discharge injunction under Section 542 of the Bankruptcy Code.  *See Taggart*, 139 S. Ct. at 1799.  The Supreme Court declined to determine whether the standard also applied to violations of the automatic stay, though it did note that the purpose of the automatic stay and the discharge injunction differ and that the specific language contained in Section 362(k)(1) is distinct from the more general language of Section 105(a).  *See id.* at 1804.  But Section 362(k) only provides for recovery by an individual injured through a violation of the automatic stay; a debtor that is not a natural person must pursue relief under Section 105(a).  *See In re Chateaugay Corp.*, 920 F.2d at 187; *see also Harker v. Eastport Holdings, LLC (In re GYPC, Inc.)*, 634 B.R. 983, 991 (Bankr. S.D. Ohio 2021) ("As Congress has chosen to limit any primate right of action for stay violations to those against individuals, the court believes it must apply *Taggart* to § 105 contempt actions not covered by § 362(k).").  The Court applies the *Taggart* standard to the question of whether BisB should be held in civil contempt for violating the automatic stay in Arcapita's bankruptcy case.

[10]      The Court also entered a "comfort order" at the outset of Arcapita's bankruptcy case informing foreign entities of the effectiveness of the automatic stay.  *See Order Confirming the Protections of Sections 362 and 365 of the Bankruptcy Code and Restraining Any Action in Contravention Thereof* [ECF No. 19] (the "Order").  This Order set forth, among other things, the actions that could not be taken against Arcapita and its property, and specifically stated that "[a]ll persons (including individuals, partnerships, corporations, and other entities and all those acting on their behalf) are hereby stayed, restrained and enjoined, pursuant to section 362(a) of the Bankruptcy Code from . . . . taking any action to obtain possession of property of the Debtors' estates or to exercise control over property of the estates [or] offsetting any debt owing to the Debtors that arose before the Petition Date against any claim against the Debtors. . . ."  *Id.* at ¶ 2.  The Order went on to note that "[i]n accordance with the Bankruptcy

*In re Arcapita*, 628 B.R. at 480-81. No party disputes that BisB had notice of the automatic stay and that the automatic stay applied to the specific types of actions taken by BisB in this particular case, namely the taking of a setoff and the retention of Arcapita's property. Soon after the bankruptcy filing, in fact, Arcapita's counsel sent a letter to BisB stating that Arcapita's bankruptcy filing "automatically, and without the need for any further order, imposed an automatic stay under section 362 of the Bankruptcy Code and, also, subjected all of the property of Arcapita, wherever located around the world, to the jurisdiction of the Bankruptcy Court." *See* Letter of Gibson Dunn, dated April 30, 2012, attached as Exh. D to Vora Decl. This letter requested immediate turnover of the funds in question. *See id.*

Second, the Court finds BisB's noncompliance with the order (*i.e.*, the automatic stay) is clear and convincing. Instead of turning over the Debtor's property, counsel to BisB's sent a letter stating that BisB had chosen to take a setoff pursuant to Bahraini law. *See* Letter of K&L Gates, dated June 28, 2012, attached as Exh. F to Vora Decl. The letter also asserted that "for the avoidance of any doubt, BisB does not accept the jurisdiction of the U.S. courts in relation to the Arcapita Investment Agreement." *Id.*

Third, the Court finds that BisB did not diligently attempt to comply with the automatic stay in a reasonable manner. BisB never came to this Court to request relief, despite the obvious disagreement of Arcapita with BisB's position. *See Morgan Guar. Trust*, 38 B.R. at 998 ("Those who seek to avoid the proscription of [Section] 362 must apply to the court for an order to lift, vacate or modify the automatic stay for good cause shown."). Indeed, BisB continued to withhold the  proceeds in question throughout the entirety of this Adversary Proceeding for close to a decade.

---

Code, the Bankruptcy Rules, and applicable law, upon request of a party in interest, and after notice and a hearing, the Court may grant relief from the restrains imposed herein in the event that it is necessary, appropriate, and warranted to terminate, annul, modify, or condition the injunctive relief herein." *Id.* at ¶ 6.

Given the obvious lack of compliance with the automatic stay, the only issue before the Court is whether BisB's actions were the kind of willful violation that exonerates BisB under the *Taggart* standard, a question that turns on whether its conduct was objectively reasonable.

## C. **BisB's Conduct Was Not Objectively Reasonable**

In arguing for civil contempt, the Committee relies primarily on the Summary Judgment Decision, which held that BisB acted in willful violation of the automatic stay, given that BisB was aware of the existence of the stay and exercised its setoff without first seeking this Court's approval. *See In re Arcapita*, 628 B.R. at 480. BisB counters by arguing that its actions were not objectively unreasonable under *Taggart*. More specifically, BisB maintains that its actions were "based on sound legal principles" and asserts that "[n]early all of the significant legal conclusions—as well as some of the critical factual findings—on which the [Contempt] Motion relies are currently on appeal to the District Court. *Obj. to the Off. Comm. of Unsecured Creditors' Mtn. for an Order Holding Bahr. Islamic Bank and Tadhamon Capital B.S.C. in Civil Contempt* ¶ 2 [ECF No. 2226] (the "BisB Objection").

The Court agrees with the Committee. BisB's belief regarding the applicability of the automatic stay was not *objectively* reasonable under the circumstances of this case. BisB's subjective beliefs that the actions it took were legally sound is irrelevant to an objective determination of whether it should be held in contempt for its violation of the automatic stay. *See Taggart*, 139 S. Ct. at 1802.[11] BisB was well aware of the existence of the stay and

---

[11]     The Supreme Court has noted that subjective intent, while not the standard, may be appropriate for a court to consider in the context of civil contempt. *See Taggart*, 139 S. Ct. at 1802 ("We have not held, however, that subjective intent is always irrelevant. Our cases suggest, for example, that civil contempt sanctions maybe warranted when a party acts in bad faith. . . . On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction.") (internal citations and quotations omitted); *but see id*. at 1804 ("We conclude that the Court of Appeals erred in applying a subjective standard for civil contempt. Based on the traditional principles that govern civil contempt, the proper standard is an objective one."). To the extent that subjective intent is relevant here, the Court finds it further confirms the appropriateness of the sanctions imposed in these circumstances. As discussed above, the record here establishes that BisB acted to willfully violate

Arcapita's belief that it was applicable in this case.  In this jurisdiction, "the proper procedure for

a creditor-bank that wishes to exercise a right of setoff against a debtor is to place a temporary

administrative hold on the debtor's account while promptly seeking relief from the stay."  *In re*

*Arcapita*, 624 B.R. at 480 n.68 (quoting 11 U.S.C. § 362(a)(7); *Bank of Am., N.A. v. Lehman*

*Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.)*, 439 B.R. 811, 834 (Bankr. S.D.N.Y.

2010)).  Given the central role that the automatic stay plays in the multi-party context of a

bankruptcy case and the responsibility that the bankruptcy court has to supervise a case that

covers all of the debtor's property, "it is logical to require those in doubt whether the stay applies

to seek clarification from the court or be sanctioned for shooting first and aiming later."  *In re*

*Windstream*, 627 B.R. at 40 (citing *Squire v. Stringer*, 820 Fed. App'x 429, 434 (6th Cir. Aug.

10, 2020) ("Allowing a creditor to circumvent the automatic stay based on his own judgments

would lead to the very chaotic and uncontrolled scramble for the debtor's assets the stay was

designed to prevent.")).

On this point, U.S. bankruptcy law was entirely consistent with the CBB's formal

direction that, to the extent BisB wished to retain the proceeds, BisB must come to this Court

before doing so.  *See In re Arcapita*, 628 B.R. at 442 ("The Court further concludes that the CBB

Law constitutes special law applicable to the CBB and that such CBB Law prevails over the

provisions of the Bahraini Civil Code.  As these Formal Directions issued by the CBB bind their

recipients as provided under Article 38(c) of the CBB Law and applicable Rules of the CBB

Rulebook, the Defendants are not entitled to a statutory setoff under the Bahraini Civil Code

because such setoffs are flatly contrary to the CBB's Formal Directions here.").  But BisB did

---

the automatic stay, well aware that its conduct was inconsistent with the automatic stay and in violation of the
CBB's direction.  *See infra* at 14 (discussing letters from BisB to CBB); *see also In re Arcapita*, 628 B.R. at 480-81.

not.  Instead, BisB's actions were diametrically opposed to the CBB's formal direction.  *See In re Arcapita*, 628 B.R. at 438-440, 481.

Indeed, BisB all but admitted to the CBB that BisB was attempting to do an end run around this Court's jurisdiction.  *See id.* at 445 n.33.  In a letter to the CBB, BisB argued that "[t]o unwind the set-off now and pursue an remedy in the US Bankruptcy Court would result in severe prejudice to our legal position" and that to require BisB "to seek formal permission from the Bankruptcy Court in this situation is tantamount to ignoring the sovereignty of the legal system in Bahrain and also to give direct force of law to an order of a Court which is not intended to have such binding effect under the Bahraini legal framework." *Id.*  Indeed, BisB defiantly noted that it was "fully aware of the commercial risks that the exercise of set-off and our case strategy entail and our decision to set-off was taken with full appreciation of those risks." *See* Letter of BisB to CBB, attached as Exh. S to *Decl. of Kavon M. Khani in Supp. of the Off. Comm. of Unsecured Creditors' Mot. for Summ. J.* [Adv. Pro. No. 13-01434, ECF No. 73]. And consistent with the notion that it is better to ask forgiveness than to seek permission, BisB observed that, even if it were to defend in this Court and lose, it could simply "make payment at that time in accordance with a final court order." *Id.*  The letter noted that to safeguard its interests, "BisB has to insist on the validity of the setoff of funds *rather than to cancel the setoff and lose its money.*" *Id.*  (emphasis added).  Denying this Contempt Motion would mean that BisB's knowing defiance of its obligations to honor the automatic stay—and the formal direction of its own central bank—would be rewarded.[12]

---

[12]    Nor should BisB be permitted to hide behind an argument that it relied upon the advice of counsel when the actions it took and its beliefs relating to them were objectively unreasonable. *See, e.g., Renzulli v. Ullman (In re Renzulli)*, 2015 Bankr. LEXIS 4439, at *26-27 n.10 (Bankr. D. N.J. Nov. 23, 2015) ("Reliance on bad legal advice is not an excuse for stay violation.  A good faith reliance on the advice of counsel is not a defense to a debtor's claim for actual damages for violation of the bankruptcy stay. . . . Even before Congress enacted [S]ection 362(h), good faith reliance on the advice of counsel was no defense to a contempt action brought to remedy willful violations of

14

BisB also contends that the Court must limit the examination of its beliefs to the time period when the setoff took place. As the setoff was prior to the issuance of the formal direction, the argument goes, BisB's conduct here was reasonable. But, while BisB asserts that the setoff was valid under Bahraini law because it took place prior to the issuance of the formal direction, this position has thoroughly examined and rejected by the Court. *See In re Arcapita*, 628 B.R. at 442-45. BisB's reliance on the timing of events fares no better here because BisB ignores its actions after the CBB's formal direction: namely, that BisB continued to hold onto the funds for a decade after the issuance of the CBB's formal direction and throughout the more than ten year period while the Adversary Proceeding was litigated.

BisB also cites to the safe harbor defenses of the Bankruptcy Code as novel issues supporting the reasonableness of its actions. But there is nothing in the record to indicate that BisB relied on the safe harbor provisions of the Bankruptcy Code at the time it took the setoff. Rather, BisB argued that it was entitled to setoff under Bahraini law, that the funds in question were not property of Arcapita's bankruptcy estate, and that this Court lacked jurisdiction. *See* Letter of K&L Gates, dated June 28, 2012, attached as Exh. F to Vora Decl. BisB's contemporaneous letters made no reference to the safe harbor provisions. Indeed, BisB has not cited to any evidence of its reliance on the safe harbor provisions at the time of the setoff.[13]

BisB also heavily relies on the fact that this Court granted its motion to dismiss based on a lack of personal jurisdiction. BisB states that "at the time of the relevant conduct, there was a substantial and well-founded dispute over whether this Court could exercise personal jurisdiction

---

the stay. . . . Reliance on advice of counsel may be considered in mitigation of the sanction, but does not constitute a defense to contempt of court.") (internal citations and quotations omitted).

[13]    In any event, this Court found in the Summary Judgment Decision that none of the safe harbors apply here. *See In re Arcapita*, 628 B.R. at 459-72; *In re Arcapita*, 640 B.R. at 623-627. Consistent with the Court's in depth analysis of the safe harbor issues, the Court concludes that none of the safe harbor provisions relied on by BisB provided an objectively reasonable basis for its actions here. *See id.*

over the Banks and, thus, whether they were subject to the automatic stay at all."  BisB Obj. ¶ 8.
But this argument ignores that, early on in this case, the District Court held on appeal that
personal jurisdiction exists over BisB for this dispute.  *See generally Off. Comm. of Unsecured
Creditors of Arcapita Bank B.S.C.(c) v. Bahr. Islamic Bank (In re Arcapita Bank B.S.C.(c)*, 529
B.R. 57 (Bankr. S.D.N.Y. 2015), *rev'd*, 549 B.R. 56 (S.D.N.Y. 2016).  In any event, this
argument is no more than a red herring (and a weak one at that) as personal jurisdiction has no
impact on the *applicability* of the automatic stay.  Rather, the issue of personal jurisdiction goes
to the Court's ability to *enforce* the stay against the party in question, but it does not invalidate
the violation itself.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 474 B.R.
76, 82 (S.D.N.Y. 2012) ("If a creditor causes property of a title 11 estate to be seized in a foreign
country, that creditor has violated the automatic stay.  Whether that creditor can be punished,
however, is a function of that creditor's amenability to United States process.").  As noted by the
Committee, BisB's position that it should not be held in contempt because it believed this Court
lacked jurisdiction is no more than "a suggestion that I won't get caught and therefore I'm
protected from sanctions."  Hr'g Tr. 49:11-13 (Nov. 10, 2021) [ECF No. 2230].

Were the Court to adopt BisB's argument regarding personal jurisdiction, it would
provide a blank check for any foreign creditor to ignore the automatic stay that protects a
Chapter 11 debtor.  All that would be necessary to avoid contempt would be to argue that the
creditor's belief regarding the personal jurisdiction of the court provided a fair ground of doubt
as to the wrongfulness of the creditor's conduct, which therefore was not objectively
unreasonable under *Taggart*.  As counsel to the Committee noted during oral argument, a ruling
in favor of BisB in these circumstances would deal "a death blow to the automatic stay [against]
foreign parties who might believe they're not subject to the court's jurisdiction [and who] will

16

simply take the chance that they're not, do exactly what this institution did, and say, well, if I'm

caught, I can at least say I had a good argument that I wasn't subject to jurisdiction." Hr'g Tr.

13:9-15 (Nov. 10, 2021). A debtor would then be forced to expend valuable estate resources in

an attempt to claw back assets that rightfully belong to the entire creditor body. Such an

approach could also fatally hamper a Chapter 11 case by starving a debtor of the assets needed to

survive. In this case, for example, Arcapita bankruptcy estate and its creditor pool were deprived

of tens of millions in estate assets by BisB and a similarly situated foreign creditor for close to a

decade while the Adversary Proceeding continued. *See Off. Comm. of Unsecured Creditors of*

*Arcapita Bank B.S.C.(c) v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c))*, 633 B.R. 207,

212 (Bankr. S.D.N.Y. 2021). Indeed, Arcapita was eventually forced to borrow funds to

administer the cases under a debtor-in-possession financing facility. *See generally Debtors' Mot.*

*to Enter Into and Perform Under DIP Agreement* [ECF No. 690]. The length of this Adversary

Proceeding, the related legal fees accrued by estate professionals and the number of decisions

issued by this Court exemplifies the estate assets that must be expended when bring funds back

into a bankruptcy estate so they can be properly distributed to creditors under the priority scheme

of the Bankruptcy Code. A creditor's self-help to avoid this priority scheme must not be

rewarded.

BisB also argues that its mere retention of funds was not a violation of the automatic stay,

citing the recent Supreme Court decision of *City of Chicago v. Fulton*, 141 S. Ct. 585 (2021).

The Court disagrees. In *Fulton*, the Supreme Court held that the "mere retention of property

does not violate [Section] 362(a)(3)." *Id*. at 589. In *Fulton*, the City of Chicago retained

vehicles that had come into its possession prior to the bankruptcy filing. *See id.* But BisB did

more than merely retain funds of Arcapita that were already in its possession. Rather, BisB

actively executed a postpetition setoff of debts between itself and Arcapita, and continued to maintain that setoff.[14]  Indeed, the exercise of a setoff is explicitly covered by Section 362(a)(7), a distinct statutory section that was not applicable in the *Fulton* case.  Section 362(a)(7) plainly provides that the stay is applicable to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor. . . ."  11 U.S.C. § 362(a)(7).  Indeed, the Supreme Court specifically stated that *Fulton* did not "settle the meaning of other subsections of [Section] 362(a)." *Fulton*, 141 S. Ct. at 592 (holding "only that mere retention of estate property after the filing of a bankruptcy petition does not violate [Section] 362(a)(3) of the Bankruptcy Code.").

Finally, BisB asks the Court to reserve decision on the Contempt Motion until all appeals have been fully and finally resolved.  It argues that such a course will prevent confusion and inefficiency during the appellate process.  But such an approach is inappropriate here.  The District Court has issued a decision affirming the Summary Judgment Decision on all counts, meaning that two courts have now disagreed with BisB on the propriety of its setoff. *See generally In re Arcapita*, 640 B.R. 604.  Moreover, this Contempt Motion is not a re-litigation of the prior decisions made by this Court that were affirmed by the District Court and are now pending before the Court of Appeals.  It raises at least one distinct issue that this Court needs to decide in the first instance: whether BisB's conduct was objectively unreasonable.  As such, BisB's argument is at odds with applicable law.  "During the pendency of an appeal of a bankruptcy court order . . . the bankruptcy court is not divested of jurisdiction to enforce or implement the order being appealed, nor is the bankruptcy court divested of jurisdiction 'to decide issues and proceedings different from and collateral to those involved in the appeal.'" *In*

---

[14]    Additionally, BisB continued to maintain the setoff and hold the funds notwithstanding the filing of the complaint in the Adversary Proceeding by the Committee, which included an action for turnover under Section 542 of the Bankruptcy Code. *See* Compl. ¶¶ 43-48 [Adv. Pro. No. 13-01434, ECF No. 1].

*re Sabine Oil & Gas Corp.*, 548 B.R. 674, 679 (Bankr. S.D.N.Y. 2016) (citing *In re Bd. Of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001); *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (S.D.N.Y.1994) ("[W]hile an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the order or judgment . . . . This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review."); *Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 105 (S.D.N.Y. 2001) (same)).

By deciding this motion now, there is no disruption or confusion of the appellate process. No good reason has been articulated for the matter to remain pending on the Court's docket. Indeed, the Committee has waited more than a decade to arrive at this point after prevailing on a thicket of contested issues. *See, e.g., Off. Comm. of Unsecured Creditors v. Bahr. Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita Bank B.S.C.(c))*, 2018 WL 718399 (Bankr. S.D.N.Y. Feb. 5, 2018); *Off. Comm. of Unsecured Creditors v. Bahr. Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita Bank B.S.C.(c))*, 575 B.R. 229 (Bankr. S.D.N.Y. 2017); *Off. Comm. of Unsecured Creditors v. Bahr. Islamic Bank and Tadhamon Capital B.S.C. (In re Arcapita Bank B.S.C.(c))*, 529 B.R. 57 (Bankr. S.D.N.Y. 2015).  Further delay now would be a miscarriage of justice.  "[J]ustice delayed is justice denied."  *See Gaur v. Gonzales*, 124 Fed. App'x 738, 743 (3d Cir. 2005) (attributing quote to nineteenth century British political leader, William Gladstone).

## D.  <u>Sanctions</u>

The Committee requests an award of sanctions in the amount of its reasonable attorneys' fees and costs incurred due to BisB's violation of the automatic stay, including fees and costs

incurred with respect to the Contempt Motion.  Bankruptcy courts have discretion when awarding sanctions through their general contempt powers under Section 105(a) of the Bankruptcy Code for a breach of the automatic stay.  *See In re Windstream*, 627 B.R. at 48.  But it has been suggested that this discretion "is considerably narrowed and perhaps absent when the focus is on compensatory rather than coercive or punitive sanctions."  *Id.* (citing *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1995); *Vuitton Fils. S.A. v. Carousel Handbags*, 592 F.2d 126, 131 (2d Cir. 1979); *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3rd Cir. 1994); *In re Genesys, Inc.*, 273 B.R. 290, 294 (Bankr. D. D.C. 2001)).

"[I]t is well recognized that compensatory damages for violation of the automatic stay include fees and expenses incurred in trying to enforce the stay . . . as well as in proving and enforcing a sanction for other damages caused by the violation."  *In re Windstream*, 627 B.R. at 49.  And "while a finding of willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports them."  *Id.* (citing Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996)).  "'Willfulness' for this purpose is defined as 'where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply."  *Id.* (quoting *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2007 U.S. Dist. LEXIS 75812, at *12 (S.D.N.Y. Oct. 10. 2007); *FirstBank P.R. v. Barclays Capital Inc. (In re Lehman Bros. Holdings)*, 524 B.R. 481, 495-97 (S.D.N.Y. 2014)).

The Court previously found BisB's violation of the automatic stay to be willful in the context of Section 362(a), noting that BisB was well aware of the existence of the automatic stay and exercised its setoff without first seeking this Court's approval.  *See In re Arcapita,* 628 B.R. 479-81.  Based on those findings, and given the Court's conclusions above, the Court also finds

that BisB's contempt was willful for purposes of the Contempt Motion.  Accordingly, the Court

finds in its discretion that the Committee's request for compensatory sanctions in the form of

reasonable attorneys' fees and costs incurred due to BisB's violation of the automatic stay is

appropriate.

As the Committee did not seek a specific sum in its Contempt Motion, the Court directs

counsel to both the Committee and BisB to confer on the issue and then contact the Court to set a

status conference regarding the next steps to be taken in assessing the exact dollar amount to be

awarded.[15]

## **CONCLUSION**

For the reasons stated above, the Contempt Motion is granted.  The Committee should

settle an order on five days' notice.  The proposed order must be submitted by filing a notice of

the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the

proposed order attached as an exhibit to the notice.  A copy of the notice and proposed order

shall also be served upon opposing counsel.

Dated: White Plains, New York
     February 3, 2023

                                   */s/ Sean H. Lane*               
                                UNITED STATES BANKRUPTCY JUDGE

---

[15]     To the extent that an argument made by BisB has not been specifically addressed by the Court in this decision, the Court concludes that BisB has not presented any basis to deny the Contempt Motion.